# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 85

### APRIL TERM, A.D. 2015

#### June 16, 2015

TIMOTHY S. NICKELS,

Appellant
(Defendant),

v.                                                                        S-14-0245

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Goshen County*
The Honorable Keith G. Kautz, Judge

*Representing Appellant:*
> Office of the Public Defender:  Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General.  Argument by Ms. Craig.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Justice.**

[¶1]    Timothy S. Nickels was convicted by a jury of strangulation of a household member.  He claims the district court erred by refusing to instruct the jury on the lesser included offense of battery.  We conclude the district court properly refused the lesser included offense instruction because there was no evidence to support it.

[¶2]    We affirm.

## ISSUE

[¶3]    Mr. Nickels states the issue on appeal as:

> Did the district court err when it refused to give appellant's requested lesser included offense instruction?

The State presents a similar issue, although it is phrased in more detail.

## FACTS

[¶4]    Mr. Nickels and the victim, Diana Evans, were involved in a long-term romantic relationship.  Earlier in their relationship, they had hitchhiked to truck stops in various states, where Mr. Nickels earned money by polishing wheels and tanks on semi-trucks.  Although the victim decided in 2003 to move to Torrington, Wyoming to live near her mother, she and Mr. Nickels continued their relationship and he would occasionally stay with her.

[¶5]    On October 21, 2013, Mr. Nickels was staying with the victim in Torrington.  They drank beer throughout the afternoon and Mr. Nickels became "aggravated" because he believed he had not been paid fairly for some work he had done for an acquaintance.  Mr. Nickels was planning to leave the next day, and the victim decided to quit drinking that evening so she could drive him out of town.  They went to bed and he asked if they were going to make love, to which she responded, "No."

[¶6]    Mr. Nickels climbed on top of the victim with a leg on either side of her, put both hands on her neck, and pressed so hard she could not breathe.  She thought she passed out and he let go.  After she took a few breaths, he began to press on her neck again.  Mr. Nickels let go the second time, said he was leaving and demanded that she give him some money.  After she complied, Mr. Nickels left the house.

[¶7]    The victim made sure the doors were locked and called a friend, who advised her to contact law enforcement.  She called 911 and Sergeant Matthew Davis of the

1

Torrington Police Department responded. At first, the victim would not answer the door because she did not know who was knocking and was afraid Mr. Nickels had returned. After Sgt. Davis identified himself, she let him in. He interviewed her and took photographs of her neck. Emergency medical technicians were summoned to the house, but she refused to be transported to the hospital.

[¶8] The State charged Mr. Nickels with one count of strangulation of a household member in violation of Wyo. Stat. Ann. § 6-2-509 (a)(i) and (b) (LexisNexis 2013), and he pleaded not guilty. The matter went to trial before a jury on March 24, 2014. The district court refused Mr. Nickels' request for a lesser included offense instruction, concluding there was no evidence to support giving such an instruction. The jury returned a guilty verdict, and Mr. Nickels appealed after the district court sentenced him.

## STANDARD OF REVIEW

[¶9] Mr. Nickels objected to the district court's failure to give the lesser included offense instructions. We, therefore, review his claim that the district court erred *de novo*. *Silva v. State,* 2012 WY 37, ¶ 23, 271 P.3d 443, 450 (Wyo. 2012).

## DISCUSSION

[¶10] Mr. Nickels was convicted of strangulation of a household member, which is a felony under § 6-2-509:

> (a) A person is guilty of strangulation of a household member if he intentionally and knowingly or recklessly causes or attempts to cause bodily injury to a household member by impeding the normal breathing or circulation of blood by:
>
> > (i) Applying pressure on the throat or neck of the household member; or
> >
> > (ii) Blocking the nose and mouth of the household member.
>
> (b) Strangulation of a household member is a felony punishable by imprisonment for not more than five (5) years.
>
> (c) For purposes of this section, "household member" means as defined in W.S. 35-21-102(a)(iv)(A) through (D), (G) and (H).

2

The district court narrowed the elements of the crime in the instruction given at trial:

1. On or about October 21, 2013;

2. In Goshen County, Wyoming;

3. The Defendant, Timothy S. Nickels;

4. Did intentionally and knowingly;

5. Cause bodily injury to [the victim], a household member;

6. By impeding her normal breathing;

7. By applying pressure on [the] throat or neck of [the victim].

[¶11] Mr. Nickels argues the district court committed reversible error by failing to instruct the jury on the lesser included offenses of battery, under Wyo. Stat. Ann. § 6-2-501(b) (LexisNexis 2013),[1] and domestic battery, under Wyo. Stat. Ann. § 6-2-511 (LexisNexis 2014). Mr. Nickels' appellate argument on § 6-2-511 is misplaced because that statute did not go into effect until July 1, 2014. He committed his crime in 2013 and the trial was held in March 2014. At that time, domestic violence was addressed by § 6-2-501(e) and (f), which provided enhanced penalties for repeat convictions of crimes against household members.

[¶12] Consequently, the question for our determination is whether the district court should have instructed the jury on the offense of battery as set out in § 6-2-501(b):

(b) A person is guilty of battery if he intentionally, knowingly or recklessly causes bodily injury to another person by use of physical force.

Under subsection (d) of the statute, battery is a misdemeanor.

---

[1] At trial, the defense also requested a lesser included offense instruction on unlawful contact, under § 6-2-501(g):
(g) A person is guilty of unlawful contact if he:
(i) Touches another person in a rude, insolent or angry manner without intentionally using sufficient physical force to cause bodily injury to another; or
(ii) Recklessly causes bodily injury to another person.
Mr. Nickels does not, however, argue on appeal that the district court erred by refusing to instruct the jury on that offense.

[¶13] Our precedent on lesser included offense instructions is long and complicated. We attempted to put to rest various problems with the governing law in *State v. Keffer,* 860 P.2d 1118 (Wyo. 1993). One of the issues addressed in that case was how to determine whether a crime is actually a lesser included offense. In making that determination, W.R.Cr.P. 31(c) governs:

> (c) *Conviction of Lesser Offense.* – The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

Based upon the "necessarily included" language of Rule 31(c), applicable federal precedent and earlier Wyoming case law, we concluded the statutory elements or "*Blockburger* test"[2] should be used to determine whether a statute sets out a lesser included offense. *Keffer,* 860 P.2d at 1133-34. The general *Blockburger* test states:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Silva*, ¶ 24, n.4, 271 P.3d at 451, n.4, quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932). The test is used in various contexts to protect a criminal defendant's right to be free from double jeopardy. *Keffer,* 860 P.2d at 1131; United States Const. Amend. V; Wyo. Const. art. 1, § 11.

[¶14] When applied to a request for a lesser included offense instruction, the statutory elements test directs:

> one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under [Wyoming Rule 31(c)].

*Keffer,* 860 P.2d at 1134, quoting *Schmuck v. United States*, 489 U.S. 705, 716, 109 S. Ct. 1443, 1450, 103 L. Ed. 2d 734 (1989). *See also Dean v. State,* 2003 WY 128, ¶¶ 14–19, 77 P.3d 692, 697–99 (Wyo. 2003). This portion of the analysis involves only a

---

[2] The *Blockburger* test is named after the seminal case of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932).

comparison of the elements of the statutes with no reference whatsoever to the evidence produced at trial. *Keffer,* 860 P.2d at 1130.

[¶15] If the court determines the lesser included offense meets the statutory elements test, it then must analyze whether the evidence supports giving a lesser included offense instruction. *Keffer* provided a comprehensive analysis of the options for addressing the sufficiency of the evidence to support a lesser included offense issue. At issue was a five-part test from *United States v. Chapman,* 615 F.2d 1294, 1299 (10th Cir. 1980), that this Court had been using to determine whether a lesser included offense instruction should be given. Under the *Chapman* test, a lesser included offense instruction was warranted if the following requirements were satisfied:

> (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence that would justify conviction of the lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense, and (5) there is mutuality, *i.e.,* a charge may be demanded by either the United States or the defense.

*Keffer,* 860 P.2d at 1124-25, quoting *Chapman,* 615 F.2d at 1299. The third and fourth elements of the *Chapman* test addressed the trial evidence.

[¶16] We decided in *Keffer,* 860 P.2d at 1134-36, that the *Chapman* test encouraged the trial court to delve too far into evidentiary issues which should be answered by the jury. We, therefore, adopted a less structured analysis to determine if the evidence supports a lesser included offense instruction. Under the *Keffer* test, the quantum of evidence required to give a lesser included offense instruction is minimal and a requested instruction should be given "if there are in dispute factual issues that would permit a jury rationally to find the defendant guilty of the lesser offense and acquit the defendant of the greater." *Id.* at 1136.

[¶17] In truth, the differences between the two tests are slight. Given the similarities, it is not surprising that this Court has continued in some circumstances to use the more structured *Chapman* analysis. *Dean,* ¶ 18, 77 P.3d at 698, and cases collected therein; *Snow v. State,* 2012 WY 18, ¶ 15, 270 P.3d 656, 661 (Wyo. 2012) (using five-part test); *Silva,* ¶ 24, 271 P.3d at 451 (using *Keffer* test). *Dean* recognized the apparent ambiguity in our precedent but did not further address the issue. Instead, we employed the consistent rule that "a lesser-included offense instruction is not to be given in the absence of some minimal evidentiary support." *Dean,* ¶ 19, 77 P.3d at 699. Stated another way, a "lesser included offense instruction should be given where there is some evidence to

5

support it and the jury rationally could acquit on [the greater offense] and convict on [the lesser offense]." *Id.,* ¶ 34, 77 P.3d at 702.

[¶18]  With these legal principles in mind, we turn to the particulars of this case, starting with the statutory elements test.  The parties seem to agree that the elements of battery in § 6-2-501(b) are a subset of the elements of strangulation of a household member in § 6-2-509.  To prove the crime of battery, the prosecution must establish the defendant (1) intentionally, knowingly or recklessly; (2) caused bodily injury; (3) to another person; (4) by use of physical force.  Section 6-2-501(b).  The crime of strangulation of a household member, as charged in this case, requires proof that the defendant (1) intentionally and knowingly; (2) caused bodily injury; (3) to the victim, who was a household member; (4) by impeding her normal breathing; (5) by applying pressure to her throat or neck.  Section 6-2-509.  The crimes of battery and strangulation of a household member share the same mental element and require bodily injury by some type of physical force.  Strangulation also requires proof that the victim was a household member and the defendant caused bodily injury by impeding the victim's normal breathing with the specific physical force of pressure to the throat or neck.  The elements of the lesser crime (battery) are, therefore, a subset of the greater crime (strangulation).

[¶19]  The next question, and the one at issue in this case, is whether the trial evidence supported instructing the jury on the crime of battery.  Mr. Nickels argues the record contains the requisite "minimal" evidence the jury could have relied upon to rationally acquit him of strangulation while convicting him of battery.  He claims the evidence could be interpreted as showing the victim exaggerated his actions and, although he caused her bodily injury, he did not impede her normal breathing by pressing on her throat or neck.  In support of his argument that he did not impede her breathing, Mr. Nickels asserts the victim sustained only slight injuries.  Mr. Nickels directs us to testimony about Sgt. Davis' report in which he observed "very slight redness" and "very slight swelling" on her neck.  Sgt. Davis expanded upon the observations in his report when he testified at trial.  He stated the redness and swelling on the victim's neck was visible to the eye and, although it was not as thick as a finger, it was "more than you would have gotten should you have snagged a necklace or pulled a collar too tight."

[¶20]  The photographs admitted into evidence at the trial showed red marks on the victim's neck on the day of the incident.  Sgt. Davis stated that he could see "raised swelling around the perimeter of the neck.  Right above the collar bone there was a big discoloration, redness that went pretty much from ear to ear."  He also noticed that her voice was "very, very raspy," she was having difficulty speaking and swallowing and was obviously in pain.

[¶21]  The problem with Mr. Nickels' argument is that the nature of the resulting injury does not differentiate between strangulation and battery.  Both crimes required proof of "bodily injury," which was defined for the jury as "physical pain" in accordance with the

6

applicable definition in Wyo. Stat. Ann. § 6-1-104(a)(i) (LexisNexis 2013). The victim testified she was in pain and Sgt. Davis observed that she was in pain.

[¶22] The elements that set strangulation apart from battery are the impediment of normal breathing by the application of pressure to the neck or throat. The victim testified she could not breathe because Mr. Nickels pressed on her neck and throat with both hands two different times. She stated that she may have passed out during the first strangulation incident because she was unable to breathe. There was no evidence that Mr. Nickels physically attacked the victim in a different manner than by applying pressure to her neck or throat or that the pressure was sufficient to cause her pain but was not sufficient to impede her breathing. If the jury had chosen not to believe the victim, it would have acquitted Mr. Nickels of strangulation.

[¶23] Mr. Nickels also argues the testimony of another inmate in the county jail supports his argument that the jury could have rationally acquitted him of strangulation but convicted him of battery. The inmate testified that he and Mr. Nickels had talked about the crime while they were both in the jail. He said Mr. Nickels told him that he had grabbed his girlfriend by the throat and choked her. The inmate testified that Mr. Nickels said he did not choke her "as hard as he could" because he did not want to accidentally kill her. He only wanted to "make his message clear" and the message was that he was not "playing around."

[¶24] The inmate's testimony does not support the lesser included instruction. In fact, it confirms that Mr. Nickels impeded the victim's normal breathing by applying pressure to her throat. Mr. Nickels told the inmate he had grabbed the victim by the throat and choked her. "Choke" is defined as "to make normal breathing difficult or impossible by compressing the throat with strong external pressure." *Webster's Third New Int'l Dictionary* 396 (2002). The fact that he did not choke the victim as hard as he could because he did not want to kill her did not change the fact that he applied pressure to her throat to impede her breathing in accordance with the statutory definition of strangulation.

[¶25] The district court rejected defense counsel's request for the lesser included offense instruction at the jury instruction conference after the close of evidence. It stated:

> If this was not strangulation, it didn't happen. There's no evidence of any lesser kind of physical contact than the hands around the throat, so there's no evidence upon which the jury could find those lesser includeds.

The district court's statement was a correct recitation of the principle that a lesser included offense "jury instruction should not be given . . . where the facts and the defense are such that the defendant, if guilty at all, is guilty of the greater offense." *Dean,* ¶ 34,

77 P.3d at 702. On the evidence presented in this case, it would not have been rational for the jury to determine that Mr. Nickels committed battery upon the victim but he did not strangle her.

[¶26] Finally, Mr. Nickels argues the lesser included instruction should have been given because there was a factual dispute about whether he and the victim were household members. Section 6-2-509(c) states: "[f]or purposes of this section, 'household member' means as defined in W.S. 35-21-102(a)(iv)(A) through (D), (G) and (H)." The jury instructions in Mr. Nickels' case tracked the statutory definitions of household member set out in Wyo. Stat. Ann. § 35-21-102(a)(iv)(B), (D) and (H) (LexisNexis 2013), by including: "persons living with each other as if married;" "persons formerly living with each other as if married;" or "persons who are in, or have been in, a dating relationship." The evidence in this case established that, at the very least, Mr. Nickels and the victim were involved in a dating relationship. There was absolutely no evidentiary basis for the jury to determine the victim was not a "household member," and thereby rationally acquit him of strangulation but convict him of battery.

[¶27] Affirmed.