BURKE, Chief Justice.
[¶1] Appellant, Aventura H. Palomo, Jr., challenges the district court's decision denying motions to continue his trial. We conclude that the district court did not abuse its discretion when it denied the motions. Appellant *702 also claims that his written sentence is illegal. While we conclude that the sentence is not illegal, the written sentence is inconsistent with the oral sentence, and we remand for correction of the sentence.
ISSUES
[¶2] Appellant presents two issues:
1. Did the district court abuse its discretion when it denied Appellant's motions to continue the trial to allow his newly-retained counsel additional time to prepare?
2. Is Appellant's sentence illegal because the written judgment and sentence is contrary to an unambiguous oral pronouncement at the sentencing hearing?
FACTS
[¶3] In the early morning hours of September 29, 2015, Officer Lisa Koeppel of the Cheyenne Police Department responded to a call from dispatch concerning a fight between Appellant and his brother. When she arrived, the two men ran. She ordered them to stop, then gave chase. Appellant attempted to enter his residence, but she stopped him from doing so. He then turned toward her, grabbed her ballistic vest, and shook her. She used a "remote door popper" to release her canine partner from the police vehicle. The canine approached the porch, barked, then bit and held Appellant's brother. Officer Koeppel pushed herself away from Appellant and attempted to get the canine to release the brother. As she did so, Appellant began kicking the dog in the ribs and abdomen.
[¶4] Officer Koeppel ordered Appellant to stop kicking the canine. When he continued to kick, she rushed Appellant and knocked him back onto the porch. The two tumbled off the porch and onto the ground, where she landed on her back and Appellant landed on top of her. He began punching her in the head and face. She called for help. The dog released the brother and helped separate Officer Koeppel from Appellant. She was then able to restrain Appellant just as two other police officers arrived. After Appellant was arrested, Officer Koeppel went to the hospital for treatment.
[¶5] Appellant was charged with one felony count of interference with a peace officer for inflicting bodily injury on Officer Koeppel, one misdemeanor count of interference with a peace officer for resisting arrest, and one misdemeanor count of cruelty to animals. He was arraigned on November 5, 2015, and entered not guilty pleas to all of the charges. Trial was originally scheduled for February 16, 2016. On January 21, 2016, Appellant filed a motion to continue the trial. The sole stated basis for the motion was that the "State and the Defendant need more time to address issues within the case." The district court granted the motion and set a new trial date of March 14, 2016. On February 18, 2016, Appellant filed a second motion to continue the trial, citing the same reason as before. The district court granted the motion and set a new trial date of April 18, 2016. On April 13, 2016, Appellant filed a third motion for continuance, again citing the need for more time to address unspecified issues. The district court also granted this motion, rescheduling the trial for May 16, 2016.
[¶6] On April 25, 2016, pursuant to a request from Appellant, the district court set Appellant's case for a change of plea hearing on May 5, 2016. Appellant moved to continue that hearing, and the district court rescheduled it for May 19, 2016. At the change of plea hearing, however, Appellant informed the court that he had "rejected the State's offer and would like to proceed to trial." The district court set a trial for the week of July 18, 2016, later clarifying that the trial would start on Wednesday, July 20, 2016.
[¶7] From the outset, Appellant had been represented by counsel from the Office of the State Public Defender. However, on July 15, 2016-the Friday before trial-private counsel entered an appearance on Appellant's behalf. This was accompanied by a motion to continue the trial. New counsel requested more time to prepare for trial, and asserted that the State did not object to the continuance. On Monday, July 18, 2016, the district court held a hearing on the motion for continuance. After establishing that new defense counsel had misrepresented the State's lack of objection to the motion, the district court heard argument from both sides, and denied *703 the motion. On July 19, 2016-the day before trial was set to begin-new defense counsel filed another motion to continue the trial. The district court held a hearing on the morning before trial, and again denied the motion to continue.
[¶8] Trial began that afternoon. Two days later, the jury returned its verdict finding Appellant guilty of both interference counts and not guilty on the remaining charge. After a sentencing hearing, the district court orally sentenced Appellant to seven to nine years on the felony count, with a credit of 408 days for time already served. The court sentenced Appellant to one year on the misdemeanor count and also provided credit for 408 days, observing that this "would effectively discharge [Appellant] from his sentence [on the misdemeanor charge]." The court did not specify whether the sentences were to be served concurrently or consecutively.
[¶9] In its written Judgment and Sentence, the district court also did not specify whether the sentences were concurrent or consecutive. The written order allowed credit for 408 days already served, but unlike the oral sentence, it did not specify that the credit applied to both sentences. Appellant filed this appeal.
DISCUSSION
[¶10] In his first issue, Appellant asserts that the district court abused its discretion when it denied his last two motions to continue his trial. We review a district court's ruling on a motion to continue as follows:
We have consistently held that the grant or denial of a motion for continuance is a discretionary ruling of the district court and, unless a clear showing of an abuse of discretion resulting in manifest injustice has been shown by the challenging party, we will not disturb that ruling. Sincock v. State , 2003 WY 115, ¶ 25, 76 P.3d 323, 333-34 (Wyo. 2003) ; Clearwater v. State , 2 P.3d 548, 553 (Wyo. 2000). The determination of whether the district court abused its discretion in refusing to grant a continuance is highly dependent upon the facts and circumstances of the individual case. Sincock , ¶ 25, 76 P.3d at 333. On review, our primary consideration is the reasonableness of the district court's decision. Id .
Grady v. State , 2008 WY 144, ¶ 18, 197 P.3d 722, 729 (Wyo. 2008).
[¶11] In its ruling on new defense counsel's first motion to continue the trial, the district court stated that it was "relying heavily" on the case of Secrest v. State , 2013 WY 102, 310 P.3d 882 (Wyo. 2013). In that case, we explained:
A defendant's Sixth Amendment right to counsel does include the right to be represented by an attorney of the defendant's own choice. Irvin [v. State ], 584 P.2d [1068,] 1070 [ (Wyo. 1978) ] (citing Chandler v. Fretag , 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954) ). That right is not, however, without limits. The United States Supreme Court has recognized "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." United States v. Gonzalez-Lopez , 548 U.S. 140, 152, 126 S.Ct. 2557, 2565-66, 165 L.Ed.2d 409 (2006) (citations omitted). We agree with the following factors enumerated by the Tenth Circuit for balancing a defendant's right to retain counsel of choice against the needs of fairness and a court's administration of justice:
In weighing this balance, courts may consider whether a continuance to allow one's preferred attorney to handle the case "would inconvenience witnesses, the court, counsel, or the parties; whether other continuances have been granted; whether legitimate reasons exist for the delay"; or whether the defendant contributed to the circumstances which gave rise to the request for a continuance. United States v. Kelm , 827 F.2d 1319, 1322 n.2 (9th Cir. 1987).[1 ] Similarly, courts may consider whether defendant has other competent counsel prepared to try the case, with attention to whether defendant obtained the other counsel as *704 lead or associate counsel; whether rejecting defendant's request for delay will result in identifiable prejudice to his case; whether this prejudice constitutes a material or substantial harm; and whether the complexity of the action or other relevant factors peculiar to the specific case necessitates further delay. United States v. Burton , 584 F.2d 485, 491, 189 U.S. App. D.C. 327 (D.C. Cir. 1978), cert. denied , 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979).
Secrest , ¶ 16, 310 P.3d at 886 (quoting United States v. Mendoza-Salgado , 964 F.2d 993, 1015 (10th Cir. 1992) ).
[¶12] We note that neither Secrest nor Mendoza-Salgado is precisely on point with the case before us now. In Secrest , ¶ 9, 310 P.3d at 885, the district court denied the defendant's motion to substitute counsel, leaving the public defender and private counsel as co-counsel. In Mendoza-Salgado , the defendant's counsel underwent emergency medical treatment shortly before trial. The trial court denied a motion to continue the trial, and the defendant claimed he was denied his right to counsel of choice when the trial court "forced him to trial represented by counsel whom he met only four days earlier, and whom he wanted to fire." Id. , 964 F.2d at 1014. In the case before us now, in contrast, the district court granted the public defender's motion to withdraw, and Appellant's chosen private counsel represented him at trial. Nevertheless, we find that the factors listed in Mendoza-Salgado , and adopted in Secrest , provide a useful framework for analyzing the district court's decision to deny Appellant's motions to continue his trial. The district court employed this framework in reaching its decision to deny the motion, and we find no error in that analysis.
[¶13] In ruling on new defense counsel's first motion for continuance, the district court found that the State had successfully demonstrated inconvenience to the witnesses. Counsel for the State asserted that it had "a lot of witnesses lined up in this case," at least one of whom had returned from overseas to testify at the trial. He also asserted that witnesses' "memories are starting to fade," and other witnesses "are starting to become unavailable to the State; in fact, one of our witnesses ... has been deployed [and] will not be available for trial."
[¶14] The district court also determined that a continuance would inconvenience the court. It noted that the court's docket was "jammed." Given its schedule, the court observed that it was "professionally reckless" for new defense counsel "to assume because you entered an appearance the Friday prior to trial, you can get the trial continued." Trial settings, the district court stated, "are precious."
[¶15] The district court recognized that, if the continuance were granted, "it would be the fifth continuance in this matter." The previous four continuances were all granted upon Appellant's motions. The district court also considered whether legitimate reasons existed for the additional delay, and found none. The only reason cited by new defense counsel was that Appellant had engaged him only a few days before trial. The district court observed that, if Appellant had concerns about his appointed public defender,
he should have notified the Court. If the defendant wanted to pursue alternate counsel, he had almost a year to pursue alternate counsel. And here we are today with apparently an alternate [counsel] just having been approached a week ago.
Whether the defendant had contributed to the circumstances which give rise to the request for a continuance again, the defendant was dilatory at best in his efforts to secure alternate counsel.
[¶16] The district court also asked new defense counsel if he and his co-counsel were ready to represent Appellant at trial, and defense counsel answered, "Your Honor, I believe we would have to be." More pointedly, the district court asked, "Is that a yes?" Defense counsel responded, simply, "Yes." The district court determined that this was not a complex case, expressing its belief that it was not "a case that would warrant significant additional preparation by new defense counsel, privately retained defense counsel; and if that was an issue, then the privately retained counsel should have evaluated the case better prior to accepting representation."
*705 Ultimately, the district court concluded that "prejudice in this case has not been established to the Court's satisfaction; in fact, [new defense counsel] cannot identify any prejudice whatsoever that the defendant would suffer."
[¶17] In sum, the district court considered all the factors listed in Mendoza-Salgado and adopted in Secrest , and every one of them favored denial of the motion to continue the trial. The district court's conclusions were reasonable under the circumstances. It did not abuse its discretion when it denied new defense counsel's first motion for continuance.
[¶18] The district court denied new defense counsel's second motion for a continuance "largely on the rationale that I provided earlier ... in connection with the first motion to continue trial." As we already concluded, the rationale for denying the first motion was sound. In arguing the second motion, however, new defense counsel raised some more concrete concerns, and we review the district court's analysis of these additional concerns.
[¶19] First, new defense counsel asserted that under Appellant's prior counsel, "there has basically been no investigation." Specifically, new counsel referred to a witness he believed could testify "in direct contradiction to other eyewitnesses and direct contradiction to the police officers involved." New defense counsel indicated that there was no written report on this witness, and the witness had not been subpoenaed to testify at trial. However, the district court noted that prior counsel had listed this witness in an earlier pretrial memorandum, but then did not subpoena him to testify. This led the district court to "conclude at this point that based on the investigation[s] that were conducted, [prior counsel] made the strategic decision not to subpoena" this witness. The district court's conclusion was not unreasonable.
[¶20] New defense counsel also objected that Appellant's brother, who was incarcerated in another county, had not been subpoenaed to testify at trial. However, the district court arranged for the brother to be transported and available at trial. Because the brother did testify, we cannot say that the district court's rejection of this reason for a continuance was unreasonable.
[¶21] New defense counsel further protested that the State had not provided medical records for Officer Koeppel or Appellant. To this, the district court concluded that Appellant could obtain his own medical records, and ordered the State to use its "best efforts" to obtain Officer Koeppel's medical records and provide them to Appellant. Further, the district court concluded that Officer Koeppel's medical records were not likely "critical or relevant because the standard is so low for the definition of the term 'injury' " to sustain a conviction for interference with a peace officer causing bodily injury. This conclusion, too, was reasonable under the circumstances.
[¶22] Finally, new defense counsel asserted that preparing an adequate defense required consideration of the police department's policies on the use of force and its policies and procedures on the use of canine partners. However, he admitted that he had "just received" the requested policies on use of force, and had "received this morning" the policies on the use of canines. While that gave new defense counsel limited time to review the policies, it was not unreasonable for the district court to determine that this did not justify continuing the trial.
[¶23] The district court's fundamental conclusion was that it did not "see anything that would lead me to conclude at this point that the defendant will suffer manifest injustice by the trial proceeding as originally scheduled." Appellant has not demonstrated that this conclusion was a clear abuse of discretion. To the contrary, the district court carefully considered all the relevant factors in balancing Appellant's requests for continuance, and made reasonable decisions on the two motions.
[¶24] In his second issue, Appellant asserts that his written sentence is illegal because it is contrary to the district court's oral sentence. Whether a sentence is illegal is a question of law that we review de novo . Palmer v. State , 2016 WY 46, ¶ 9, 371 P.3d 156, 158 (Wyo. 2016). An illegal sentence is *706 one which exceeds statutory limits, imposes multiple terms of imprisonment for the same offense, or otherwise violates constitutions or the law. Gould v. State , 2006 WY 157, ¶ 9, 151 P.3d 261, 265 (Wyo. 2006).
[¶25] Appellant's written sentence is not illegal. It does not exceed statutory limits. It does not impose multiple punishments for the same offense, and it does not otherwise violate any constitutional provision or legal requirement.
[¶26] However, as the State concedes, the written sentence does not conform to the oral sentence. The oral sentence allowed Appellant credit for 408 days already served in incarceration, and it applied that credit to both sentences. The written sentence also allowed 408 days credit, but did not specify that the credit applied to both sentences. In addition, the written sentence did not indicate whether the two sentences were to be served concurrently or consecutively. We have previously recognized that "when a court is silent on the concurrent or consecutive nature of a sentence, there is a presumption that the sentences are consecutive." Bird v. State , 2015 WY 108, ¶ 11, 356 P.3d 264, 268 (Wyo. 2015). Further, when sentences are consecutive, "allocating credit to one, but not more, of a defendant's consecutive sentences is proper." Palmer , ¶ 14, 371 P.3d at 159. However, because the district court orally allocated credit to both of Appellant's sentences, it apparently intended the sentences to run concurrently. The written sentence is inconsistent with the oral sentence because it did not specify that the two sentences were to run concurrently and because it did not apply the 408 days credit to both sentences. We have long recognized that "when a discrepancy exists between the oral pronouncement and the written order, the oral pronouncement prevails." Smith v. State , 985 P.2d 961, 963 (Wyo. 1999) (citing Lane v. State , 663 P.2d 175, 176 (Wyo. 1983) ). The written sentence should be corrected.
[¶27] In conclusion, we affirm the district court's decision denying the motions to continue Appellant's trial. While Appellant's sentence is not illegal, the written sentence is inconsistent with the district court's oral sentence. We remand to the district court with instructions to correct the written sentence.

Kelm has been overruled on other grounds. See United States v. Heredia , 483 F.3d 913, 920 (9th Cir. 2007).