# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 104

APRIL TERM, A.D. 2021

*September 22, 2021*

CHASITY LARAE JACOBS,

**Appellant**
**(Defendant),**

v.                                                          S-20-0237

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel. Argument by Ms. Cooper.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General. Argument by Ms. Mercer.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

\* Chief Justice at time of oral argument.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Justice.**

[¶1]   Chasity Jacobs was a passenger in her co-defendant's vehicle when he led law enforcement on a high-speed chase through Cheyenne, Wyoming.  For her part in the crimes committed, she was convicted of one count of aiding and abetting attempted second-degree murder, one count of reckless endangering, and one count of misdemeanor possession of methamphetamine.  She challenges the district court's refusal to give her proposed jury instruction on the lesser-included offense of accessory to attempted voluntary manslaughter.  She also challenges the court's sentence on the reckless endangering and misdemeanor possession counts.  We affirm but remand for correction of the district court's written sentencing order.

## ISSUES

[¶2]   Ms. Jacobs presents two issues, which we state as follows:

> 1.      Did the district court err when it declined to give Ms. Jacobs' proposed jury instruction on the lesser-included offense of accessory to attempted voluntary manslaughter?

> 2.      Did the district court's written sentencing order on the reckless endangering and misdemeanor possession counts deviate from its oral pronouncement and exceed the maximum statutory sentences for those counts?

## FACTS

[¶3]   On May 3, 2019, Ms. Jacobs was a passenger in a vehicle driven by her co-defendant, Dominique Childers.  In affirming Mr. Childers' convictions, we described the events that led to the charges against Ms. Jacobs and him.

> On May 3, 2019, Trooper Adam Powell with the Wyoming Highway Patrol was on patrol on Interstate 25 north of Cheyenne. At approximately mile post 24, he observed two vehicles traveling southbound towards Cheyenne, both exceeding the posted 80-mile-per-hour speed limit. The first vehicle was going 96 miles per hour, and the rear vehicle was going 98 miles per hour. Trooper Powell turned around in the median and began to follow the two vehicles.
>
> Trooper Powell caught up to the first car, which had already slowed down. He activated his overhead lights, pulled it over, and instructed the driver to follow him so he could pull over

1

the second vehicle. At approximately mile post 18 he caught up to the second vehicle, which was a black Toyota sedan traveling at approximately 113 miles per hour. Trooper Powell activated his lights and sirens and attempted to pull the vehicle over, but the driver of the Toyota failed to comply, and a high-speed chase ensued.

The driver of the Toyota, later identified as Dominique Childers, continued to drive approximately 115 miles per hour and then exited the interstate at exit 13, Vandehei Avenue. Mr. Childers was still driving at a high speed when he hit the roundabout off exit 13, and then he returned to the interstate and continued southbound. He exited the interstate again at exit 12, Central Avenue, and then drove through a stop sign and oncoming traffic onto the Interstate 25 on-ramp. Instead of continuing down the on-ramp, he swerved to the right side of the ramp and traveled through the median into the parking lot of the Wyoming Department of Transportation and the Wyoming Highway Patrol.

After the Toyota drove through the parking lot, the driver's door opened, and it came side-by-side with Trooper Powell's pursuing vehicle. Trooper Powell was able to observe a male driver, later identified as Mr. Childers, and a female passenger, later identified as Chasity Jacobs.

Instead of stopping, Mr. Childers continued to elude Trooper Powell. Trooper Powell continued pursuing the vehicle, which was then traveling eastbound on Central Avenue. At this point, Childers' vehicle was missing a tire, and he was driving recklessly, even in the center lane of traffic at times.

In an attempt to stop the vehicle before it entered the city limits and endangered more citizens, Trooper Powell attempted a tactical vehicle intervention. However, when he got his patrol car into position to perform the maneuver, he saw a silver pistol come out of the passenger window, and multiple rounds were fired in his direction. Consequently, he hit his brakes and distanced his vehicle from the Toyota. Mr. Childers continued on Central Avenue towards downtown Cheyenne with the trooper still in pursuit.

2

Shortly after the first shots were fired, Trooper Powell again had to swerve because an arm holding a pistol came out the driver's window and shots were once more fired in his direction. As the chase continued, more shots were fired out the back of the Toyota, causing its back window to burst and Trooper Powell's front windshield to spiderweb. As shots continued to be fired, Mr. Childers continued traveling towards the residential and commercial portions of Cheyenne, and more law enforcement officers joined the pursuit.

At some point, Mr. Childers turned northbound on Central Avenue, going the wrong way on that one-way street. Lyndsey Smith and her husband were pulled to the side of the road in the far-left lane of Central Avenue at 17th Street. Ms. Smith testified that Mr. Childers attempted to avoid hitting her vehicle head-on by swerving towards the sidewalk, which caused him to instead hit the driver's side of her vehicle and a planter and tree on the sidewalk. He continued to elude police after the collision, traveling through intersections and neighborhoods at a high rate of speed.

At this point, Officer Mark Ehlman with the Cheyenne Police Department was directly behind Childers' vehicle. Officer Geffery Eugene Mims of the Department was also pursuing the vehicle and calling out to his dispatcher each time shots were fired from Childers' vehicle.

At the roundabout connecting 19th Street, Pershing Boulevard, and Converse Avenue, Officer Ehlman witnessed more shots being fired in the direction of law enforcement officers and decided to attempt a stop to prevent injury to other vehicles or citizens. He drove up to the driver's side of the Toyota, pointed his service weapon out his passenger window, and fired several times towards the driver. Mr. Childers swerved north and drove across a sidewalk and through a fence, and then crashed into an embankment at the Cheyenne Veterans Affairs Medical Center.

Mr. Childers exited the vehicle with his hands in the air and got on the ground. Ms. Jacobs exited the passenger side, walked backward to the street, and also got on the ground.

*Childers v. State*, 2021 WY 93, ¶¶ 3-13, 493 P.3d 168, 169-70 (Wyo. 2021).

3

[¶4]   When they were apprehended, Mr. Childers had more than three grams of methamphetamine, and Ms. Jacobs had 2.5 grams.  The State charged Mr. Childers with two counts each of attempted first degree murder, felony property destruction, and misdemeanor property destruction, and one count each of felony possession of methamphetamine, reckless endangering, and eluding.

[¶5]   Law enforcement recovered two handguns from the Toyota, a Smith & Wesson 45-caliber pistol and a Ruger 9mm pistol.  Based on video footage from Trooper Powell's dash camera, a 45-caliber bullet recovered from a construction site along the route of pursuit, the presence of Ms. Jacobs' DNA on the 45-caliber pistol and 9mm magazines, and statements Ms. Jacobs made in phone calls from the jail, the State charged Ms. Jacobs with one count of attempted first degree murder, one count of accessory to attempted first degree murder, and one count of reckless endangering with a firearm.  It also charged her with one count of misdemeanor possession of methamphetamine.

[¶6]   Before trial, Ms. Jacobs pled guilty to the misdemeanor possession charge.  The cases against Mr. Childers and Ms. Jacobs were joined for trial, and a jury trial was held on the remaining charges from December 3, 2019 to December 10, 2019.  After the State rested, neither defendant testified or presented other evidence.

[¶7]   At the jury instruction conference, the district court indicated that it would instruct the jury on the elements of attempted first degree murder and the lesser-included offense of attempted second-degree murder.  Counsel for both Mr. Childers and Ms. Jacobs requested that the court also instruct the jury on the lesser-included offense of voluntary manslaughter.  The court denied the request on the ground that there was no evidence that either Mr. Childers or Ms. Jacobs acted under a heat of passion.

> In short, there is no rational evidence of a heat of passion under the same or similar circumstances.
>
> Somebody trying to – a police officer trying to pull over a defendant for speeding certainly is not the type of act that would arouse the type of passion in the mind of an ordinary, reasonable person in those same circumstances that would create the type of passion that is necessary to negate malice in this case. That's the Court's determination on that.

[¶8]   The jury found Ms. Jacobs not guilty of the attempted first- or second-degree murder of Trooper Powell, and not guilty of accessory to the attempted first-degree murder of

Trooper Powell. It found her guilty of accessory to attempted second-degree murder and of reckless endangering with a firearm.[1]

[¶9]    The district court sentenced Ms. Jacobs to a term of twenty-five to thirty-five years on the accessory to attempted second-degree murder count. It sentenced her to one year each on the reckless endangering and misdemeanor possession counts, to be served concurrent with each other and with the accessory count. Ms. Jacobs timely appealed to this Court.

## DISCUSSION

### A.    Lesser-Included Offense Instruction

[¶10]   Counsel for Ms. Jacobs proposed a jury instruction on the lesser-included offense of voluntary manslaughter, which would have allowed the jury to consider the offense of accessory to attempted voluntary manslaughter in its deliberations.[2] We therefore review the district court's denial of the requested instruction de novo. *Hartley v. State*, 2020 WY 40, ¶ 6, 460 P.3d 716, 718 (Wyo. 2020) (citing *Nickels v. State*, 2015 WY 85, ¶ 9, 351 P.3d 288, 290 (Wyo. 2015)).

[¶11]   A crime is a lesser-included offense if it meets the statutory elements test, meaning that its elements "are a subset of the elements of the charged offense." *Nickels*, ¶ 14, 351 P.3d at 291 (quoting *State v. Keffer*, 860 P.2d 1118, 1134 (Wyo. 1993)); *see also Cecil v. State*, 2015 WY 158, ¶ 17, 364 P.3d 1086, 1091 (Wyo. 2015). If a court determines that an offense meets the statutory elements test, it must then determine whether the evidence supports giving a lesser-included offense instruction. *Nickels*, ¶ 15, 351 P.3d at 292. "[T]he quantum of evidence required to give a lesser included offense instruction is minimal and a requested instruction should be given 'if there are in dispute factual issues that would permit a jury rationally to find the defendant guilty of the lesser offense and acquit the defendant of the greater.'" *Id.* ¶ 16, 351 P.3d at 292 (quoting *Keffer*, 860 P.2d at 1136); *see also Dean v. State*, 2003 WY 128, ¶ 19, 77 P.3d 692, 699 (Wyo. 2003) ("[A] lesser-included offense instruction is not to be given in the absence of some minimal evidentiary support.")).

---

[1] The jury returned a guilty verdict on all counts against Mr. Childers except the two counts of attempted first degree murder. With respect to those counts, the jury convicted him of the two lesser-included offenses of attempted second degree murder. Mr. Childers appealed only his convictions for felony property destruction and felony methamphetamine possession, and we affirmed. *Childers*, ¶¶ 32, 33, 493 P.3d at 174.

[2] Instruction No. 15 read in part: "The offense of Accessory, Aid, and Abet—Attempt: Murder, First Degree, with which Defendant CHASITY JACOBS is charged in Count II, also includes the lesser offense of Accessory, Aid, and Abet—Attempt: Murder, Second Degree."

[¶12] We have previously recognized that under the statutory elements test, voluntary manslaughter is a lesser-included offense of first-degree murder. *Parkhurst v. State*, 2019 WY 63, ¶ 11 n.4, 443 P.3d 834, 837 n.4 (Wyo. 2019) (citing *Sanders v. State*, 7 P.3d 891, 894 (Wyo. 2000)); *see also Keffer*, 860 P.2d at 1139 ("We hold, therefore, that the crime of voluntary manslaughter is a lesser included offense of the crime of second degree murder."); *Jahnke v. State*, 692 P.2d 911, 921-22 (Wyo. 1984) (recognizing that the offense of aiding and abetting voluntary manslaughter is a lesser-included offense of aiding and abetting first-degree murder), *overruled on other grounds by Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998). The question in this case then is whether there was the requisite minimal evidence to support giving an instruction on voluntary manslaughter.

[¶13] A person is guilty of voluntary manslaughter if "he unlawfully kills any human being without malice, expressed or implied, . . . [v]oluntarily, upon a sudden heat of passion." Wyo. Stat. Ann. § 6-2-105(a)(i) (LexisNexis 2021).

> "Heat of passion" means such passion as naturally would be aroused in the mind of an ordinarily reasonable person in the same or similar circumstances as those in question which would cause him to act rashly, without reflection or deliberation, and from passion rather than from judgment. The heat of passion must be aroused suddenly, and the act resulting in death must occur while the defendant was acting under the direct and immediate influence of such heat of passion, and before sufficient time has elapsed to permit the heat of passion to cool.

*Farrow v. State*, 2019 WY 30, ¶ 35, 437 P.3d 809, 820 (Wyo. 2019) (quoting Wyoming Criminal Pattern Jury Instruction No. 21.05C).

[¶14] Stated another way, "[v]oluntary manslaughter is an intentional killing in the heat of passion as a result of severe provocation." *Shull v. State*, 2017 WY 14, ¶ 29, 388 P.3d 763, 770 (Wyo. 2017) (quoting 2 Charles E. Torcia, *Wharton's Criminal Law* § 155 (15th ed., Sept. 2016 update)), *overruled on other grounds by Schmuck v. State*, 2017 WY 140, ¶ 31, 406 P.3d 286, 297 (Wyo. 2017). The defendant must be "in a state of passion engendered in him by an adequate provocation (i.e., a provocation which would cause a reasonable man to lose his normal self-control)." *Shull,* ¶ 60, 388 P.3d at 777 (quoting 2 Wayne R. LaFave, *Substantive Criminal Law* § 15.2 (2d ed., Oct. 2016 update)); *see also Taylor v. State*, 2009 WY 31, ¶ 25, 203 P.3d 408, 413 (Wyo. 2009) (recognizing "extreme provocation and a sudden heat of passion" as "hallmarks of voluntary manslaughter"). The severe or extreme provocation that causes a heat of passion or loss of control must have been produced by the victim's actions. *Krucheck v. State*, 702 P.2d 1267, 1270 (Wyo. 1985) (quoting *State v. Fowler*, 268 N.W.2d 220, 224 (Iowa 1978)).

6

[¶15]   In this case, there is no evidence of an extreme or severe provocation.   Trooper Powell attempted to lawfully stop Mr. Childers for a speeding violation, and he and other officers continued that lawful pursuit when Mr. Childers failed to stop.  As a matter of law, a reasonable person would not lose her normal self-control or her ability to act from judgment rather than passion under such circumstances.  *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 15.2(b)(4) (3d ed., Oct. 2020 update) ("[A] *lawful* arrest cannot constitute sufficient provocation.") (citing *State v. Wood*, 607 S.E.2d 57 (S.C. 2004); *State v. Madden*, 294 A.2d 609 (N.J. 1972)).  Indeed, Ms. Jacobs herself has not argued on appeal that the actions of law enforcement were the provocation for her alleged heat of passion, and she in fact has not identified a provocation that she claims to have been sufficient to arouse a heat of passion.

[¶16]   Moreover, even if Ms. Jacobs had identified a legally sufficient provocation, her requested instruction would have been properly refused because she has pointed to no evidence that she had acted in a heat of passion.  For example, in *Keffer*, we held that the trial court erred in denying the prosecution's request for a lesser included offense instruction on voluntary manslaughter. 860 P.2d at 1140.  We explained:

> With respect to the first question, the central factual dispute at Keffer's trial was her intent. She admitted firing the gun at Jackson and killing him. If the jury accepted all of the State's evidence, the killing was committed with malice. If the jury accepted Keffer's evidence, she acted in self defense, and the homicide was justifiable. A middle ground, however, is easily seen. If the jury questioned the credibility of the co-employee's testimony, which was strongly attacked by the defense during cross-examination, then the presence or absence of malice became an open question. Furthermore, ***the jury heard Keffer testify that she was "scared" as she withdrew the gun from a bedroom dresser. Keffer's husband, also testified that Keffer was afraid.*** The jury was entitled to weigh such fear to determine if it was of "such a character or degree as to render the accused incapable of cool reflection" thus reducing a second degree homicide to manslaughter.

*Id.* at 1139 (emphasis added).

[¶17]   In *Jahnke*, we also held that the evidence supported an instruction on the lesser-included offense of voluntary manslaughter.  692 P.2d at 922.

> The jury in this case rationally could find Deborah Jahnke guilty of voluntary manslaughter while acquitting her of the greater charged offense of murder. When he testified, Richard

Jahnke characterized Deborah Jahnke as being very upset and crying after their parents had left and he had stated his intentions. He described her as looking like she was losing it, murmuring, shaking, and walking around the house nervously running her fingers through her hair as they prepared for their parents' return. Deborah Jahnke was very upset when her request to "kill Mom" was refused. Deborah Jahnke's statement and Richard Jahnke's testimony both established that she had been directly involved in a violent family confrontation that evening, and that both had been victims of prior abuse at the hands of their father. From this testimony the jury could have found that Deborah Jahnke was acting "upon a sudden heat of passion" aroused by the earlier incidents which continued through her participation in the planning and accomplishment of what she characterized as the father's execution.

*Id.* (citations omitted); *see also Bruce v. State*, 2015 WY 46, ¶¶ 67-68, 346 P.3d 909, 929-30 (Wyo. 2015) (upholding voluntary manslaughter conviction where witness testified that defendant was ranting and hollering after striking victim and told her he was angry because he thought victim was having sex with his girlfriend); *State v. Helton*, 73 Wyo. 92, 116-17, 276 P.2d 434, 443 (1954) (holding jury had no right to convict defendant of crime greater than voluntary manslaughter where uncontroverted evidence showed defendant to have been "in a highly upset, frightened, and confused emotional and impassioned condition," when she shot victim).

[¶18]  In contrast to these cases, the record in this case is devoid of evidence that Ms. Jacobs was in an impassioned state.  In fact, the evidence was to the contrary.  The pursuit lasted twelve to fifteen minutes and thus was not a sudden occurrence.  During that period, Ms. Jacobs had the presence of mind to both fire and reload a weapon, acts that required at least some amount of deliberation.  *See Sanders*, 7 P.3d at 895 ("[F]ashioning a weapon from three separate components is not a hallmark of passion, but an indication of planning and deliberation.").[3]

---

[3] In her brief on appeal, Ms. Jacobs argues (citations to record omitted):

> Although Ms. Jacobs said she was shooting too, there is no evidence of what pistol she was shooting. Ms. Jacobs [sic] DNA was only found on the 2 magazines for a 9mm weapon. It was not found on a pistol itself. Further, while there is evidence that her DNA was on the 9mm magazines, and that based on the number of rounds fired from the 9mm that it had to be reloaded in some fashion, there is still an open question of when her DNA was deposited on the magazines and whether it was her or Mr. Childers who did the reloading. These were disputed issues of fact as to what Ms. Jacobs did and was an issue to be determined by the jury.

8

[¶19] Ms. Jacobs does not confront these deficiencies in the evidence, and instead more generally argues that because she was an accessory to the attempted crime, it was important that the jury consider her separate individual intent in assessing her culpability. She contends that the lesser-included offense instruction on accessory to attempted voluntary manslaughter would have so focused the jury's assessment.

[¶20] We do not disagree that Ms. Jacob's individual intent as an accessory may differ from that of the principal. "[T]he aider and abettor must share the principal's criminal intent, but the prosecution is not required to prove that the aider and abettor possessed the identical intent to that possessed by the principal." *Fales v. State*, 908 P.2d 404, 408 (Wyo. 1995) (citing *Jahnke*, 692 P.2d at 921). "Individual culpability of the several parties to the crime is determined by the intent of each of them." *Jahnke*, 692 P.2d at 922.

[¶21] That Ms. Jacobs could theoretically have had an intent different from that of Mr. Childers does not, however, mean that a voluntary manslaughter instruction was required. "[A] lesser-included offense instruction should not be given in the absence of some minimal evidentiary support." *Sindelar v. State*, 2018 WY 29, ¶ 55 n.5, 416 P.3d 764, 777 n.5 (Wyo. 2018) (citing *Johns v. State*, 2018 WY 16, ¶ 23, 409 P.3d 1260, 1268 (Wyo. 2018)). The question is not whether Ms. Jacobs could have had a different intent, but whether there was any evidence that she did, so as to support the requested lesser-included offense instruction.

[¶22] In this case, the answer to that question is no. Because there was no evidence of either an extreme provocation or that Ms. Jacobs acted in a heat of passion, an instruction on the lesser-included offense of accessory to attempted voluntary manslaughter would have done no more than improperly invite the jury to speculate as to Ms. Jacobs' emotional state. *See Bruce*, ¶ 80, 346 P.3d at 933 ("[A]n instruction is properly refused if it invites the jury to engage in speculation or conjecture."). The district court thus did not err in denying Ms. Jacobs' requested instruction.

---

First, we note that the evidence showed Ms. Jacobs' DNA to be on the 45-caliber pistol. More importantly, whether Ms. Jacobs was shooting and whether she reloaded the 9mm weapon are no longer open questions, as she suggests. The jury found her guilty of aiding and abetting attempted second-degree murder, presumably based on its finding that she reloaded the 9mm weapon. It also found her guilty of reckless endangering with a firearm, which required a finding that she "[e]ngaged in firing a weapon." Ms. Jacobs has not challenged the sufficiency of the evidence to support the jury's verdict, and we therefore need not revisit her role in the crimes. We are concerned only with her state of mind when she took those actions, and in that regard the only question we must address is whether the record contained even minimal evidence of an extreme or severe provocation and that Ms. Jacobs acted in a heat of passion.

**B.**     <u>**Legality of Ms. Jacobs' Sentence**</u>

[¶23] At the sentencing hearing, the district court sentenced Ms. Jacobs to "one year of incarceration" on the reckless endangering and misdemeanor possession counts. In its written order, the court sentenced her to "a period of not less than one (1) year" on each of those same counts. Ms. Jacobs contends that the written sentences on each of the counts were illegal because they exceeded the one-year statutory maximum imprisonment for each offense and failed to conform to the court's oral pronouncement.

[¶24] Whether a sentence is illegal is a question of law that this Court reviews de novo. *Wanberg v. State*, 2020 WY 75, ¶ 28, 466 P.3d 269, 275 (Wyo. 2020) (citing *Nitchman v. State*, 2018 WY 116, ¶ 7, 428 P.3d 173, 175 (Wyo. 2018)).

> "An illegal sentence is one that exceeds statutory limits, imposes multiple terms of imprisonment for the same offense, or otherwise violates the constitution or the law." *Wanberg v. State*, 2020 WY 75, ¶ 28, 466 P.3d 269, 275 (Wyo. 2020) (citing *Palomo v. State*, 2018 WY 42, ¶ 24, 415 P.3d 700, 705-06 (Wyo. 2018)). If a discrepancy exists between the district court's oral pronouncement and its written order, "the oral pronouncement prevails." *Id.* (quoting *Palomo*, ¶ 26, 415 P.3d at 706). A written sentence that is inconsistent with the oral pronouncement is not necessarily illegal, but its inaccuracy must be corrected. *Id.* (citing *Palomo*, ¶ 27, 415 P.3d at 706).

*Brown v. State*, 2021 WY 79, ¶ 9, 489 P.3d 1162, 1164 (Wyo. 2021).

[¶25] Because the district court's written sentencing order imposes sentences of ***not less than*** one year on the reckless endangering and misdemeanor possession counts, it arguably imposed open-ended terms on those counts. The order thus improperly deviated from the one-year terms the court orally pronounced during sentencing. *Wanberg*, ¶¶ 29-31, 466 P.3d at 275-76 (remanding to district court to conform written sentencing order to oral pronouncement). Additionally, because the written terms are open-ended, they also arguably exceeded the maximum one-year terms authorized by statute for each count, rendering them illegal. *See* Wyo. Stat. Ann. § 6-2-504(c) ("Reckless endangering is a misdemeanor punishable by imprisonment for not more than one (1) year"); Wyo. Stat. Ann. § 35-7-1031(c)(i)(C) (possession of less than three grams of controlled substance in powder form is misdemeanor punishable by imprisonment of "not more than twelve (12) months"). Accordingly, we remand to the district court for clarification of its written sentencing order.

## CONCLUSION

[¶26]   The district court did not err in denying Ms. Jacobs' request for a jury instruction on the lesser-included offense of accessory to attempted voluntary manslaughter, but the court's written sentencing order deviated from its oral pronouncement.   We therefore affirm Ms. Jacobs' conviction but remand for correction of the court's written sentencing order.