# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 40

### OCTOBER TERM, A.D. 2019

### March 23, 2020

JESSE JAMES HARTLEY,

Appellant
(Defendant),

v.

S-19-0206

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*

> *Eric F. Phillips, Eric F. Phillips Law Office, Rock Springs, Wyoming. Argument by Mr. Phillips.*

*Representing Appellee:*

> *Bridget L. Hill, Attorney General; Jenny Lynn Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Russell W. Farr, Senior Assistant Attorney General. Argument by Mr. Eames.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    A jury convicted Jesse James Hartley of first-degree felony murder and aggravated child abuse.  Mr. Hartley appeals, arguing that the district court erred in denying his request for two lesser-included offense instructions and that prosecutorial misconduct required a new trial.  We affirm as to those issues but reverse in part and remand to correct a sentencing error.

## ISSUES

[¶2]    Mr. Hartley raises two issues on appeal:

1. Did the district court improperly deny Mr. Hartley's request for two lesser-included offense instructions?

2. Did the prosecutor commit prosecutorial misconduct during her closing statements?

## FACTS

[¶3]    On May 1, 2018, B.G.'s mother entrusted her boyfriend, Jesse James Hartley, with the two-year-old child's care.  Later that afternoon, Mr. Hartley called the mother saying B.G. was unresponsive and he was driving B.G. from their home in Mountain View to the hospital in Evanston.  B.G.'s mother was in Evanston when she received the call and she immediately went to the hospital and asked for an ambulance to meet Mr. Hartley and B.G. en route.  Despite the hospital staff's best efforts, B.G. died.  The responding pediatrician, Dr. Gilmartin, noted injuries on B.G.'s body indicative of child abuse.  Dr. Gilmartin documented these injuries and performed a CT scan of B.G.'s entire body which indicated abusive head trauma, previously known as "shaken baby syndrome."  The following day, Dr. Bennett performed B.G.'s autopsy and found that he died of "non-accidental abusive head trauma."

[¶4]    Mr. Hartley gave several statements to law enforcement about what occurred on the day of B.G.'s death; the first in a patrol vehicle after the ambulance met Mr. Hartley and B.G. on the interstate, the second and third at the hospital, and the final statement at the Uinta County Jail after his arrest.  Each statement contained different versions of the events leading to B.G.'s death.

[¶5]    The State charged Mr. Hartley with first-degree felony murder pursuant to Wyo. Stat. Ann. §§ 6-2-101(a) & (b) and 6-2-503(a)(ii)(A) & (c) (LexisNexis 2019), aggravated child abuse pursuant to Wyo. Stat. Ann. § 6-2-503(a)(ii)(A) & (c), and first-degree sexual abuse of a minor pursuant to Wyo. Stat. Ann. § 6-2-314(a)(i) & (b).  Mr. Hartley did not testify, but the State introduced evidence of his statements to law enforcement.  Following

1

a four-day trial, a jury convicted Mr. Hartley of first-degree felony murder and aggravated child abuse and acquitted him of first-degree sexual abuse of a minor. The district court sentenced Mr. Hartley to life in prison "with the opportunity for parole" for the felony murder and a concurrent sentence of eighteen to twenty-five years in prison for aggravated child abuse. This appeal followed.

## DISCUSSION

### I. The district court did not err in denying Mr. Hartley's lesser-included offense instructions

[¶6] Mr. Hartley objected to the district court's denial of his lesser-included offense instructions. We review his claim that the district court erred de novo. *Nickels v. State*, 2015 WY 85, ¶ 9, 351 P.3d 288, 290 (Wyo. 2015).

[¶7] At oral argument, Mr. Hartley conceded felony murder does not contain any lesser-included offenses. Thus, we address this argument only briefly. At trial, Mr. Hartley requested instructions for criminally negligent homicide and involuntary manslaughter, arguing they are lesser-included offenses of first-degree murder. The district court declined to give the instructions, and we agree with its conclusion.

[¶8] The State charged Mr. Hartley with first-degree murder under a felony-murder theory; here, that B.G. died during the perpetration of child abuse or aggravated child abuse. Wyo. Stat. Ann. § 6-2-101(a). This Court has held that "a bright line rule is appropriate in the context of felony murder, and the statutory definition does not logically permit the giving of any instruction on any lesser included offense with respect to felony murder." *Jansen v. State*, 892 P.2d 1131, 1139 (Wyo. 1995). That bright-line rule finds support in the statutory elements test that we customarily apply to determine if a lesser-included offense instruction is available. *See Nickels*, 2015 WY 85, ¶ 13, 351 P.3d at 291 (citing *State v. Keffer*, 860 P.2d 1118, 1133-34 (Wyo. 1993) ("[T]he statutory elements or '*Blockburger* test' should be used to determine whether a statute sets out a lesser included offense.") (footnote omitted)). "[A] crime is a lesser included offense 'if its elements are a subset' of the elements of the greater offense." *Cecil v. State*, 2015 WY 158, ¶ 17, 364 P.3d 1086, 1091 (Wyo. 2015) (quoting *Bowlsby v. State*, 2013 WY 72, ¶ 9, 302 P.3d 913, 916 (Wyo. 2013)). *See also* W.R.Cr.P. 31(c). Felony murder "imposes a form of strict responsibility on those perpetrating the underlying felony for killings occurring during the commission of that felony. . . . [T]he necessary intent the State must prove to convict a person of felony murder is the intent associated with the underlying felony." *Mares v. State*, 939 P.2d 724, 729 (Wyo. 1997), *post-conviction relief granted on other grounds*. In this case, the State had to prove the elements of either child abuse or aggravated child abuse, Wyo. Stat. Ann. § 6-2-503(a)(ii)(A) & (c), and then prove that B.G.'s death occurred during the perpetration of that crime. In contrast, the crime of criminally negligent homicide does not require the State to prove any of the elements of child abuse under Wyo.

Stat. Ann. § 6-2-503, and it contains the additional element of negligence. Wyo. Stat. Ann. § 6-2-107. Likewise, involuntary manslaughter does not require the State to prove any of the elements of child abuse and it contains the additional element of recklessness. Wyo. Stat. Ann. § 6-2-105(a)(ii). Both criminally negligent homicide and involuntary manslaughter contain almost entirely different elements from the felony murder charge in this case, and they are therefore not lesser-included offenses of felony murder. Mr. Hartley was not entitled to any lesser-included offense instructions, and the district court did not err in denying his request.

## II. *The prosecutor's statements during closing arguments did not constitute prosecutorial misconduct*

[¶9] Prosecutorial misconduct occurs when a prosecutor illegally or improperly attempts to persuade a jury "to wrongly convict a defendant or assess an unjustified punishment." *Bogard v. State*, 2019 WY 96, ¶ 16, 449 P.3d 315, 320 (Wyo. 2019) (quoting *Dixon v. State*, 2019 WY 37, ¶ 37, 438 P.3d 216, 231 (Wyo. 2019)). Mr. Hartley contends that the prosecutor committed three instances of misconduct during her closing argument. Mr. Hartley did not object, and we therefore apply a plain error standard, which requires Mr. Hartley to show: "1) the record clearly reflects the incident urged as error; 2) a violation of a clear and unequivocal rule of law; and 3) that he was materially prejudiced by the denial of a substantial right." *Bogard*, 2019 WY 96, ¶ 21, 449 P.3d at 321 (quoting *Carroll v. State*, 2015 WY 87, ¶ 11, 352 P.3d 251, 255 (Wyo. 2015)).

[¶10] Mr. Hartley asserts the prosecutor committed two types of misconduct during her closing argument. First, he argues the prosecutor twice commented on Mr. Hartley exercising his right to remain silent and, in doing so, shifted the burden of proof onto the defense. Second, Mr. Hartley argues the prosecutor improperly gave her opinion on evidence presented and therefore misled the jury. We address each separately.

## A. Commenting on the right to remain silent

[¶11] During closing argument, the prosecutor made two statements that Mr. Hartley asserts commented on his right to remain silent and impermissibly shifted the burden of proof onto the defense. Referring to Mr. Hartley's response during the investigative interview at the Uinta County Jail, the prosecutor said, "[w]hen asked why on earth then would he have these injuries to the front of his face, the frenulum tear, and the bite on the tongue if he hit the back of his head—that doesn't make sense—**Jesse had nothing he could offer**." (Emphasis added.) Second, the prosecutor commented on where pieces of physical evidence were found in the house and how that evidence did not align with Mr. Hartley's statements to law enforcement:

> More concerning is, according to Mr. Hartley, there was no
> reason they would be that day in this hallway bathroom. But

in the hallway bathroom, you have Item 12, Item 29, Item 30, and Item 31 of tested material. Three of those items tested positive for [B.G.]'s blood. **And yet no explanation for why they could have been there** other than the result of the abuse that we know actually occurred in that home.

(Emphasis added.) Both errors are clearly reflected in the record, so the first requirement of the plain error test is met. *Carroll*, 2015 WY 87, ¶ 11, 352 P.3d at 255 (citing *Masias v. State*, 2010 WY 81, ¶ 20, 233 P.3d 944, 950 (Wyo. 2010)).

[¶12] The second step requires Mr. Hartley to establish a "violation of a clear and unequivocal rule of law in a clear and obvious, not merely arguable, way." *Bogard*, 2019 WY 96, ¶ 21, 449 P.3d at 321. Mr. Hartley is correct that there is a clear and unequivocal rule of law that a prosecutor may not comment on a defendant's constitutional right to remain silent. *Id*. at ¶ 28, 449 P.3d at 322 (citing *Lancaster v. State*, 2002 WY 45, ¶ 36, 43 P.3d 80, 95 (Wyo. 2002), *overruled on other grounds by Jones v. State*, 2019 WY 45, 439 P.3d 753 (Wyo. 2019)). However, his claim fails because the prosecutor's statements do not violate the identified rule of law.

[¶13] Attorneys are afforded wide latitude during closing argument and may comment on evidence admitted during trial and suggest reasonable inferences. *Bogard*, 2019 WY 96, ¶ 19, 449 P.3d at 321. When reviewing comments alleged to violate the rule, "[w]e consider the entire context in which the statements were made to decide whether there was an impermissible comment upon the defendant's exercise of his right of silence, and will not take sentences and phrases out of context." *Id*. at ¶ 30, 449 P.3d at 323. Viewing the prosecutor's statements in context, the prosecutor did not comment on Mr. Hartley's right to remain silent or shift the burden to the defense. Rather, she compared the statements Mr. Hartley made to law enforcement to the physical evidence admitted during trial and indicated inconsistencies. Mr. Hartley fails to establish the second requirement of plain error and his claim that the prosecutor committed misconduct by commenting on his right to remain silent fails.

## B.     Improper opinion argument

[¶14] Mr. Hartley next argues that the prosecutor committed misconduct by impermissibly offering her opinion of the evidence. During closing argument, the prosecutor said:

And in the discussion that they had at the hospital in the parking lot, **I was struck by how calm he actually was at that point.** He was certainly hysterical before but calm in providing responses and concerns and discussing things with them, while hearing in the background the wailing of [B.G.]'s mother.

4

(Emphasis added.) The first requirement of plain error analysis is satisfied.

[¶15] We move next to determining whether the prosecutor's statements violated a clear and unequivocal rule of law in a clear and obvious way. *Bogard*, 2019 WY 96, ¶ 21, 449 P.3d at 321. "We have held that it is improper for a prosecuting attorney to inject his opinion as to the weight of the evidence in arguing to the jury." *Harper v. State*, 970 P.2d 400, 405 (Wyo. 1998) (citing *McLaughlin v. State*, 780 P.2d 964, 967 (Wyo. 1989)); *see also Dixon*, 2019 WY 37, ¶ 49, 438 P.3d at 234 (citing *Teniente v. State*, 2007 WY 165, ¶ 30, 169 P.3d 512, 524 (Wyo. 2007)). In *Mintun*, we explained that the reason for this rule is that a prosecutor may be seen as an authority whose opinion carries greater weight than the jury's opinion. *Mintun v. State*, 966 P.2d 954, 960 (Wyo. 1998). Thus, Mr. Hartley identified a clear and unequivocal rule of law. However, he fails to demonstrate that this rule was violated in a clear and obvious way.

[¶16] We evaluate the "propriety of closing arguments in the context of the entire argument and compare them with the evidence produced at trial." *Dixon*, 2019 WY 37, ¶ 41, 438 P.3d at 231 (quoting *Doherty v. State*, 2006 WY 39, ¶ 18, 131 P.3d 963, 969 (Wyo. 2006)). We have evaluated a prosecutor's use of "I" statements numerous times in the past to determine whether the statements are so damaging that they prejudice a defendant's right to a fair trial. *Buszkiewic v. State*, 2018 WY 100, ¶ 20, 424 P.3d 1272, 1278 (Wyo. 2018) ("Although the prosecutor's use of personal pronouns was not ideal, . . . , when viewed in context, it is clear she was not attempting to sway the jury with her personal beliefs."); *Carroll*, 2015 WY 87, ¶ 35, 352 P.3d at 259-60 (finding that adding the phrase "I believe" in front of the statement "we have proven beyond a reasonable doubt . . ." did not transform the statement from commenting on a reasonable inference about the evidence to an improper expression of the prosecutor's belief); *Harper*, 970 P.2d at 405 ("The occasional inclusion of phrases like 'I believe' or 'I think' in an argument, however, is not prejudicial."); *Mintun*, 966 P.2d at 960 ("We have recognized that 'I believe' and 'I think' are commonly used, colloquial phrases; a prosecutor's inadvertent and infrequent use of these phrases is not prejudicial."). In this case, the prosecutor used the phrase "I was struck by" when describing Mr. Hartley's third interview with law enforcement. The prosecutor's use of a personal pronoun was not ideal. *Buszkiewic*, 2018 WY 100, ¶ 20, 424 P.3d at 1278. However, when viewed in context, the prosecutor was not attempting to use her position of authority to sway the jury. Here, singular use of the term "I was struck by" simply emphasized a piece of evidence admitted at trial. The prosecutor's use of the personal pronoun "I" did not violate the rule against prosecutors injecting their personal opinion when arguing to the jury and, in any event, it was not prejudicial. Thus, Mr. Hartley fails to establish plain error, and his claim fails.

[¶17] Finally, we address a sentencing error brought to our attention by the State. *See Kahlsdorf v. State*, 823 P.2d 1184, 1190 (Wyo. 1991) (correcting an illegal sentence despite failure to raise the issue on appeal). The district court sentenced Mr. Hartley to life in prison "with the opportunity for parole" for the felony murder and a concurrent sentence

of eighteen to twenty-five years in prison for aggravated child abuse. Wyo. Stat. Ann. § 6-2-101(b) does not authorize the sentence imposed by the district court. As the State did not seek the death penalty, Mr. Hartley could be sentenced to either "life imprisonment without parole or life imprisonment according to law." Wyo. Stat. Ann. § 6-2-101(b). Additionally, as aggravated child abuse was the underlying sentence for the first-degree felony murder charge, sentencing Mr. Hartley to eighteen to twenty-five years on that charge was improper. *Mares*, 939 P.2d at 730 (citing *Roderick v. State*, 858 P.2d 538, 552 (Wyo. 1993); *Castle v. State*, 842 P.2d 1060, 1061 (Wyo. 1992)). "[W]e hold the imposition of multiple punishments for felony murder and the underlying felony violates the Double Jeopardy Clauses of the United States and Wyoming constitutions." *Cook v. State*, 841 P.2d 1345, 1352-53 (Wyo. 1992).

[¶18]  We affirm in part, but reverse and remand to correct the sentencing error.