# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 57

APRIL TERM, A.D. 2023

June 6, 2023

DAVID WAYNE HEMBREE,

Appellant
(Defendant),

v.                                                                                    S-22-0230

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Fremont County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*
　　Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Francis H. McVay,* Senior Assistant Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*
　　Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General.  Argument by Mr. Burton.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

* An Order Allowing Withdrawal of Counsel was entered on February 10, 2023.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]   David Wayne Hembree was charged with one count of stalking in violation of a protective order, prohibited by Wyo. Stat. Ann. § 6-2-506(b) & (e)(iv), and one count of criminal entry, in violation of Wyo. Stat. Ann. § 6-3-302.  A jury found him guilty on both counts.   Mr. Hembree appeals, asserting the prosecutor committed prosecutorial misconduct, in closing argument, by commenting on his silence in violation of his constitutional right.  He asserts the district court erred in admitting testimony defining "spying distance," a term not referenced to in the stalking statute, and that the judgment recites an incorrect date of the offense.  We affirm and remand for correction of the date in the Judgment and Sentence.

*ISSUES*

[¶2]   We rephrase the issues:

1.  Did the prosecutor's comments during closing improperly reference Mr. Hembree's exercise of his constitutional right to silence and amount to plain error?

2.  Did the district court plainly err when it allowed the State's witness to discuss "spying distance"?

3.  Should the Judgment and Sentence be remanded to correct a conceded error?

*FACTS*

[¶3]    TB dated Mr. Hembree from fall 2017 through May 2019, when she broke up with him.  After the breakup, the two remained friends and had a "physical" relationship from August 2019 until TB ended the physical relationship in December 2019.  Mr. Hembree and TB continued to communicate, with Mr. Hembree vacillating between agreeing to be friends and wanting more.  On February 14, 2020, TB made clear she did not want a relationship with him.  Mr. Hembree persisted in contacting her and asking questions.  He told her if she did not answer his questions, he would come to her house and ask them.  TB initially responded to his communications to appease him.  She did not want him at her house.  By summer 2020, Mr. Hembree's communications had not waned, and TB became more adamant.  She repeatedly told Mr. Hembree to leave her alone.

[¶4]    Mr. Hembree became more relentless.  In addition to calling and texting TB, he began driving by her house, frequently and at all hours.  TB confronted Mr. Hembree, telling him again and again to leave her alone and to stop driving by her house.  In September 2020, TB stopped responding to Mr. Hembree's text messages.  Mr. Hembree

1

continued texting. Through the fall and winter he drove by her house "almost every single night" and he began driving by her work. After receiving a particularly inappropriate text from Mr. Hembree, TB blocked his number. Mr. Hembree persisted with phone calls and began sending Snapchats.

[¶5]    On December 18, 2020, at around 11 p.m., Mr. Hembree drove by TB's home. TB had gone to bed and was talking on the phone. She rolled over and found Mr. Hembree standing next to her bed. She got out of bed, "pulled [Mr. Hembree] out of the room, shoved him down the hallway [and] shoved him out the door." TB reported the incident to the Riverton Police who determined Mr. Hembree had entered TB's home through the dog door.

[¶6]    On December 29, 2020, shortly after that encounter, TB obtained a protection order which prohibited Mr. Hembree from contacting her and from approaching her, her residence, her employment, or her mother's home. Mr. Hembree was served with the protection order on December 30, 2020. On January 7, 2021, TB saw Mr. Hembree drive by her house. She reported the incident to the police, who responded but did not locate Mr. Hembree. A couple of hours later, TB saw Mr. Hembree drive by her house a second time. Again, she called the police.

[¶7]    Deputy Aaron Lane responded to this call. Deputy Lane located Mr. Hembree's vehicle in TB's neighborhood and pulled him over. Deputy Lane eventually arrested Mr. Hembree and placed him in his patrol vehicle.

[¶8]    At trial, the State called a number of witnesses including Deputy Lane. Relevant to this appeal, Deputy Lane testified regarding what happened when he pulled Mr. Hembree over:

> I asked [Mr. Hembree] to step out of the vehicle. He said something to the effect of "I wasn't even drinking," I said something to the effect of "okay, sounds good," or "sounds good," something like that. And then I walked to the driver's side of the vehicle, David Hembree stepped out of the driver's side, and I said, "Where did you just come from?" He said he was dropping off a friend, I said, "where?" He wouldn't tell me or didn't want to tell me. I asked again, still wouldn't tell me, and I said, "Riverview?" and he said, "Yeah – no." And I said, "All right. Turn around, you're under arrest."

[¶9]    Deputy Lane's patrol vehicle dash video recorded a conversation between Deputy Lane and Mr. Hembree while Mr. Hembree was in the patrol vehicle. This recording was played for the jury. Mr. Hembree initiated a conversation with Deputy Lane and asked,

2

"So the paperwork[1] says spying distance, what does that even mean?" Deputy Lane responded, "It means that you parked your vehicle with your lights off close to her house." After a lengthy pause, Hembree stated, "Cuz I didn't do that." Mr. Hembree did not testify at trial.

[¶10] After closing, the case was submitted to a jury which returned a guilty verdict on both the stalking and criminal entry counts. Additional facts relevant to Mr. Hembree's complaints about the closing argument are addressed in the analysis. Mr. Hembree appeals.

## I.    The prosecutor's comments during closing did not improperly reference Mr. Hembree's exercise of his constitutional right to silence and were not plain error.

[¶11] Mr. Hembree asserts that the prosecutor made statements in closing that violated his right to remain silent under the Fifth Amendment and art. 1, § 11 of the Wyoming Constitution and therefore amounted to prosecutorial misconduct.

## A.    Standard of Review

[¶12] We review claims of prosecutorial misconduct with reference to the entire trial record. *Drennen v. State*, 2013 WY 118, ¶ 10, 311 P.3d 116, 121 (Wyo. 2013). "Likewise, the propriety of any comments made by the prosecutors during closing argument is measured in the context of the entire argument." *Id.* (citing *Strange v. State*, 2008 WY 132, ¶ 4, 195 P.3d 1041, 1043 (Wyo. 2008)). "We have long said that a prosecutor is afforded '[g]reat latitude' when arguing a case to the jury." *Watkins v. State*, 2016 WY 108, ¶ 14, 383 P.3d 1080, 1083 (Wyo. 2016) (quoting *Armstrong v. State*, 826 P.2d 1106, 1115–16 (Wyo. 1992)).

[¶13] Mr. Hembree did not object to the prosecutor's statements or the questions he now claims to be improper. Accordingly, the plain error standard of review applies. To establish plain error, Mr. Hembree bears the burden of showing that (1) the record is clear as to the alleged error; (2) the error violated a clear and unequivocal rule of law; and (3) the violation adversely affected a substantial right which resulted in material prejudice. *Dixon v. State*, 2019 WY 37, ¶ 27, 438 P.3d 216, 228 (Wyo. 2019) (quoting *Garriott v. State*, 2018 WY 4, ¶ 21, 408 P.3d 771, 780–81 (Wyo. 2018)). "[O]ur review is focused on whether the error affected the accused's substantial right to a fair trial." *Id.* ¶¶ 39–40, 438 P.3d at 231 (citing *McGinn v. State*, 2015 WY 140, ¶ 13, 361 P.3d 295, 299 (Wyo. 2015)).

[¶14] "We are reluctant to find plain error in closing arguments 'lest the trial court becomes required to control argument because opposing counsel does not object.'" *Dixon*, ¶ 39, 438 P.3d at 231 (quoting *Trujillo v. State*, 2002 WY 51, ¶ 4, 44 P.3d 22, 24 (Wyo.

---

[1] The Court assumes the paperwork to which Mr. Hembree referred is the order of protection. However, that order does not contain the term, "spying distance."

2002)). Timely objection is the proper way to correct improper closing arguments, because it "allows the trial court to weigh the impact of the comments and assess curative measures." *Dice v. State*, 825 P.2d 379, 384 (Wyo. 1992). "Under the plain error standard of review, we reverse a district court's decision only if it is so plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue." *Dixon*, ¶ 27, 438 P.3d at 228 (quoting *Garriott*, ¶ 21, 408 P.3d at 780).

## B.    Analysis

[¶15]   During closing, the prosecutor made three statements that Mr. Hembree asserts were improper comments on his right to remain silent. The first statement occurred when the prosecutor discussed the elements of the stalking charge:

> [T]he stalking statute requires a specific intent to harass. It's not like the general intent to commit criminal entry, it takes a specific intent to harass, and requires proof that the defendant, with the intent to harass, engaged in a course of conduct reasonably likely to harass. **Well, how would we really know what specifically he intended or what he was thinking unless he told us.** How would you know that about anyone for that matter. How would you know what somebody really intends or is thinking.

(Emphasis added.)   The prosecutor then outlined the trial evidence elicited to prove the stalking charge. The second statement was the prosecutor's discussion of Mr. Hembree's refusal to tell Deputy Lane where he had dropped his friend. In rebuttal, the prosecutor summarized Mr. Hembree's statements:

> "Where you been?"
>
> "Oh, I was dropping off a friend."
>
> "Where?"
>
> "I won't say."
>
> "Riverview?"
>
> "Yeah—no." What's that? **He knew what he was doing, he was just doing it four minutes earlier. A guilty state of mind, guilty conscience. He knew what he was doing, and he knew he wasn't supposed to be doing it more importantly.**

4

(Emphasis added.) The third statement is the prosecutor's description of Mr. Hembree's lengthy pause during the spying distance discussion in Deputy Lane's patrol vehicle.

[¶16] All three alleged errors are clearly reflected in the record. The first prong of plain error is met. *Hartley v. State*, 2020 WY 40, ¶ 11, 460 P.3d 716, 719 (Wyo. 2020). To satisfy the second prong, Mr. Hembree must demonstrate the existence of a clear and unequivocal rule of law which was transgressed "in a clear and obvious, not merely arguable, way." *Brown v. State*, 2019 WY 102, ¶ 13, 450 P.3d 208, 211 (Wyo. 2019) (quoting *Schreibvogel v. State*, 2010 WY 45, ¶ 30, 228 P.3d 874, 885 (Wyo. 2010)). Clearly and unequivocally under the law a prosecutor may not comment on a defendant's exercise of the constitutional right to remain silent. *See Ridinger v. State*, 2021 WY 4, ¶ 35, 478 P.3d 1160, 1168 (Wyo. 2021) ("prosecutor may not directly or indirectly comment upon a defendant's failure to testify"); *Hartley*, ¶ 12, 460 P.3d at 719 ("a prosecutor may not comment on a defendant's constitutional right to remain silent" (citing *Bogard v. State*, 2019 WY 96, ¶ 28, 449 P.3d 315, 322 (Wyo. 2019))). In determining whether a prosecutor has commented on a defendant's right to remain silent, we consider the prosecutor's statements in context.

> Whether a prosecutor has improperly commented on a defendant's refusal to testify turns on "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Oldham v. State*, 534 P.2d 107, 112 (Wyo. 1975) (quoting *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir. 1955)). "[W]e consider the entire context in which the statements were made to decide whether there was an impermissible comment upon the defendant's exercise of his right of silence." *Hartley*, ¶ 13, 460 P.3d at 720 (quotations omitted). Importantly, "[i]t is not improper for the [prosecutor] to draw attention to the failure or lack of evidence on a point if it is not intended to call attention to the failure of the defendant to testify." *Oldham*, 534 P.2d at 112 (quoting *Knowles*, 224 F.2d at 170). *See also, Larkins v. State*, 2018 WY 122, ¶ 95, 429 P.3d 28, 50 (Wyo. 2018) ("In closing arguments, a prosecutor has 'wide latitude' to argue the evidence in the record and all reasonable inferences which can be drawn from that evidence.") (citations and quotations omitted); *Dysthe v. State*, 2003 WY 20, ¶ 24, 63 P.3d 875, 884 (Wyo. 2003) ("Prosecutors, just like defense counsel, may review the evidence and suggest to the jury inferences based thereon.") (citation omitted).

5

*Ridinger*, ¶ 36, 478 P.3d at 1168–69.

[¶17]   The first two statements Mr. Hembree complains of were not improper comments on his right to remain silent.  The prosecutor's rhetorical question, "how would we really know what . . . he was thinking unless he told us," was followed by the prosecutor's recitation of circumstantial evidence from which the jury could infer the specific intent required for a stalking conviction. *See, e.g.*, *Guy v. State*, 2008 WY 56, ¶¶ 12–14, 184 P.3d 687, 693 (Wyo. 2008) (prosecutor's discussion of the fact that there was no confession was explanation as to why defendant's state of mind could be inferred from circumstances and not an impermissible comment on silence).

[¶18]   The prosecutor's account of Mr. Hembree's refusal to tell Deputy Lane where he had dropped his friend accurately described the evidence of Mr. Hembree's encounter with Deputy Lane.  It emphasized a gap in Mr. Hembree's defense and called into question his credibility regarding a critical fact—Mr. Hembree's reason for being in TB's neighborhood.  It also described the circumstances leading to his arrest. *See, e.g.*, *Hartley*, ¶ 11–12, 460 P.3d at 719 (prosecutor's comment on defendant's lack of explanation for how victim's injury occurred did not violate clear and unequivocal rule of law).

[¶19]   Viewed in context, these statements in the prosecutor's closing argument were not "manifestly intended" or "of such character that the jury would naturally and necessarily take" them to be comments "on the failure of the accused to testify." *Ridinger*, ¶ 36, 478 P.3d at 1168–69 (quoting *Oldham v. State*, 534 P.2d 107, 112 (Wyo. 1975)).

[¶20]   The third statement Mr. Hembree complains of occurred when the prosecutor discussed Mr. Hembree's recorded response to Deputy Lane's explanation of spying distance.  The prosecutor stated:

> And when Deputy Lane explained the allegation against him from that night about going down there, parking across the road and turning his lights off across from her house, his response was "Did you see me do that?" and **there's four seconds, four long seconds** [then] "I didn't do that."

(Emphasis added.)  Mr. Hembree contends that the prosecutor used Mr. Hembree's pause against him, yet he does not explain how this pause could be an exercise of his right to silence.  The reflective pause occurred between Mr. Hembree's voluntary question and his answer to his own question.  The pause was not an exercise of Mr. Hembree's right to remain silent and the prosecutor's discussion of this evidence was not a comment on silence, rather it was a description of the conversation between Mr. Hembree and Deputy Lane.

6

[¶21] Mr. Hembree has not established that the prosecutor violated a clear and unequivocal rule of law in a clear and obvious way in making any of the three statements. He has not established plain error and his claims of prosecutorial misconduct fail.

## II. The district court did not plainly err when it allowed the State's witness to discuss "spying distance."

[¶22] Mr. Hembree next argues that plain error occurred when Deputy Lane testified regarding his understanding of the definition of spying distance and its relationship to surveillance. Because no objection to this testimony was raised at trial, our review is for plain error. As with his claims of prosecutorial misconduct, to establish plain error, Mr. Hembree must show the record is clear as to the alleged error, the error violated a clear and unequivocal rule of law which affected a substantial right and materially prejudiced him. *Supra* ¶ 13.

[¶23] Mr. Hembree satisfies the first prong of plain error because Deputy Lane's discussion of spying distance and surveillance and the jury instruction that refers to surveillance[2] appear in the record. The jury first heard the term "spying distance" when

---

[2] In its entirety, Jury Instruction 14 reads:

"Course of conduct" means a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose.

"Harass" means to engage in a course of conduct, including but not limited to verbal threats, written threats, lewd or obscene statements or images, vandalism or nonconsensual physical contact, directed at a specific person or the family of a specific person, which the defendant knew or should have known would cause a reasonable person to suffer substantial emotional distress, and which does in fact seriously alarm the person toward whom it is directed.

A person commits the crime of stalking if, with intent to harass another person, the person engages in a course of conduct reasonably likely to harass that person, including but not limited to any combination of the following:

Communicating, anonymously or otherwise, or causing a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses;

Following a person, other than within the residence of the defendant;

Placing a person under **surveillance** by remaining present outside his or her school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant;

Otherwise engaging in a course of conduct that harasses another person.

7

viewing video of the conversation between Mr. Hembree and Deputy Lane in the patrol vehicle. In the video, Mr. Hembree referred to "spying distance" and asked Deputy Lane what the term meant. Deputy Lane told Mr. Hembree that someone is within spying distance when they park outside of someone's house with their lights off. Deputy Lane testified about the exchange. During cross examination, Mr. Hembree's attorney and Deputy Lane had the following exchange:

> Q: And you would agree with me that spying distance is not a legal term?
>
> A: It is in the definition of stalking, surveillance and spying.
>
> Q: Okay. Well, let me—spying is found in that definition?
>
> A: Yes, sir.
>
> Q: Or is it surveillance?
>
> A: It could be both, I think it's both.
>
> Q: Okay. So when you gave this definition of a legal term, the one found in the statute, was that a legal definition you gave or more of a layman's explanation?
>
> A: I would say layman's because it's not a full detail of the legal definition, yes.

[¶24] We turn to the second prong of plain error. Mr. Hembree contends that this discussion, when considered with Jury Instruction 14, *supra* note 2, which referred to "surveillance," clearly transgressed an unequivocal rule of law. Mr. Hembree cites *Cecil v. State*. *Cecil* held that a trial court "need not give an instruction defining a term unless it has a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances." *Cecil v. State*, 2015 WY 158, ¶ 14, 364 P.3d 1086, 1090 (Wyo. 2015) (quoting *Butz v. State*, 2007 WY 152, ¶ 19, 167 P.3d 650, 655 (Wyo. 2007), *abrogated on different grounds in Granzer v. State*, 2008 WY 118, ¶¶ 18–19, 193 P.3d 266, 271–72 (Wyo. 2008)).

---

A "'course of conduct' may encompass acts of harassment occurring prior to the issuance of an order proscribing contact with the victim."
(Emphasis added.)

[¶25] Mr. Hembree's argument as to how the rule in *Cecil* was violated is unclear. He seems to contend that Deputy Lane's testimony on spying distance intermingled with Instruction 14, creating jury confusion on the definition of "surveillance." Therefore the district court erred in admitting Deputy Lane's testimony on "spying distance" because, under *Cecil*, surveillance required no further explanation. However, he does not explain how Deputy Lane's lay definition of "spying" or "spying distance" conflicted with the instruction language, the stalking statute, or the ordinary meaning of surveillance. Wyoming's stalking statute does not contain the term "spying" or "spying distance."[3] *See* Wyo. Stat. Ann. § 6-2-506. Because Mr. Hembree presents no cogent argument as to how a clear and unequivocal rule of law has been violated, he has not established plain error. *See, e.g.*, *Person v. State*, 2023 WY 26, ¶ 34, 526 P.3d 61, 72 (Wyo. 2023).

### III.     *The Judgment and Sentence should be remanded to correct a conceded error.*

[¶26] Mr. Hembree contends that the district court's written Judgment and Sentence contains a clerical error and requests an order nunc pro tunc to correct it.

[¶27] The district court's Judgment and Sentence states the "Date of Offense" for Count I was "February 14, 2020." Mr. Hembree argues that this is a clerical error and contends the correct date of offense for Count I was "On or between February 14, 2020 & January 7, 2021," as stated in the Judgment of Conviction & Order After Jury Trial.[4] Mr. Hembree asks us to remand to the district court for entry of an order nunc pro tunc modifying the date in the Judgment and Sentence. The State concedes that the Judgment and Sentence contains only the beginning date for the stalking charge, but argues that remand is not necessary because W.R.Cr.P. 32 does not require the inclusion of the date or date range for the charged crime in a judgment or sentence.

[¶28] Whether a written judgment or sentence complies with the Wyoming Rules of Criminal Procedure is subject to de novo review. *Washington v. State*, 2011 WY 132, ¶ 12, 261 P.3d 717, 721 (Wyo. 2011). W.R.Cr.P. 32 sets forth the required contents of a judgment and sentence. As pointed out by the State, the rule does not require the date (or dates) of a charged offense.[5] However, "[a] party may request an order *nunc pro tunc* when

---

[3] The statute contains examples of conduct that can be considered a stalking course of conduct. One of those examples is "[p]lacing a person under surveillance by remaining present outside his or her . . . residence[.]" Wyo. Stat. Ann. § 6-2-506(b)(iii).

[4] We note that the Information and the Order After Arraignment provide a date of January 7, 2021, for Count I.

[5] W.R.Cr.P. 32 provides:

     (b) *Judgment.—*

                    .     .     .

9

an order contains an inaccuracy." *Johnson v. State*, 914 P.2d 810, 812 (Wyo. 1996) (citing *Christensen v. State*, 854 P.2d 675, 682 (Wyo. 1993)). "A *nunc pro tunc* order serves to rectify omissions from the record so as to make it speak the truth." *Christensen*, 854 P.2d at 682 (internal quotation marks omitted) (quoting *Martinez v. City of Cheyenne*, 791 P.2d

---

(2) Except for forfeit offenses for which citations have issued, other misdemeanors where the penalty imposed does not exceed a fine of $200.00, and pleas entered under Rule 43(c)(2), a judgment of conviction after a trial shall include:

(A) The plea and the verdict for each offense for which the defendant was tried;

(B) A statement as to whether the defendant testified and whether or not the defendant was advised by the court with respect to the defendant's right to testify or not to testify;

(C) An adjudication as to each offense including the name and statute number for each convicted offense and whether such offense is a felony or a misdemeanor; and

(D) The name of the defendant's attorney or a statement that the defendant appeared *pro se*.

.   .   .

(c) *Sentence.*—

.   .   .

(2) Contents.—A written sentence shall be signed by the judge and entered by the clerk of court without delay. The sentence may be included in the judgment or separately entered. Except for forfeit offenses for which citations have issued, other misdemeanors where the penalty imposed does not exceed a fine of $200.00, and pleas entered under Rule 43(c)(2), as a minimum the sentence shall:

(A) State each offense for which sentence is imposed, including the statute number and whether the offense is a felony or a misdemeanor;

(B) State the sentence imposed for each convicted offense including for felonies the minimum and maximum term and state whether multiple sentences are to run concurrently or consecutively;

(C) State whether the sentence is to run concurrently with or consecutive to any other sentence being served or to be served by the defendant;

(D) If probation is not granted, state whether probation was considered by the court;

(E) Include a finding of all time served by the defendant in presentence confinement for any sentenced offense;

(F) State the extent to which credit for presentence confinement is to be given for each sentenced offense;

(G) Include an assessment for the victims of crime compensation fund as required by W.S. 1-40-119; and

(H) Include a finding as to whether the defendant is able to make restitution and if restitution is ordered fix the reasonable amount owed to each victim resulting from the defendant's criminal acts.

10

949, 956 (Wyo. 1990), *overruled on other grounds by Beaulieu v. Florquist*, 2004 WY 31, 86 P.3d 863 (Wyo. 2004)).

[¶29]   While the date(s) of the charged offense is not required, the Judgment and Sentence specifies the date of offense for Count I (stalking in violation of a protective order) as February 14, 2020.[6]  It contains a clerical error.  It fails to accurately reflect the date range in which the conduct that violated the protective order occurred.   It is subject to clarification.  *See Eddy v. First Wyoming Bank N.A.-Lander*, 713 P.2d 228, 235 (Wyo. 1986) (finding that because the judgment failed to reflect the exact dates of appellant's liability to appellee, it contained a clerical error and was subject to clarification).   We remand to the district court for entry of an order nunc pro tunc to omit the date or to accurately reflect the date of the offense for Count I.

## *CONCLUSION*

[¶30]   The prosecutor's comments in closing did not improperly reference Mr. Hembree's exercise of his constitutional right to silence, and the district court did not plainly err when it allowed the State's witness to discuss "spying distance."  We remand for an order nunc pro tunc to correct the date of offense in the Judgment and Sentence.  We affirm in all other respects.

---

[6] TB made it clear she no longer wanted contact with Mr. Hembree on February 14, 2020.  The Protection Order was served on December 30, 2020.  Mr. Hembree was arrested after parking outside TB's home on January 7, 2021.  *Supra* ¶¶ 3, 6, 7.