# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 81

**APRIL TERM, A.D. 2024**

**July 26, 2024**

DONALD A. WHITMORE,

Appellant
(Defendant),

v.

S-23-0273

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Converse County*
*The Honorable F. Scott Peasley, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Sean H. Barrett, Senior Assistant Appellate Counsel.

*Representing Appellee:*
Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Kristine D. Rude, Assistant Attorney General.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]   Donald A. Whitmore was convicted of vehicular homicide and four misdemeanors. On appeal, he contends the prosecutor committed misconduct in closing argument by commenting on his decision not to testify, shifting the burden of proof, and vouching for the credibility of a witness. We affirm.

## *ISSUE*

[¶2]   The sole issue for our consideration is whether the prosecutor committed misconduct during closing argument.

## *FACTS*

[¶3]   At 6:00 a.m. on October 6, 2022, Mr. Whitmore and his coworkers Josh Voytoski and Antonio Jurado, III completed an overnight shift on an oil rig in Converse County, Wyoming. About an hour after that, they rode in Mr. Voytoski's vehicle to Douglas to buy groceries. They returned to the rig site for an hour or two and then decided to return to town.

[¶4]   On the trio's second trip to Douglas, they took Mr. Whitmore's wife's vehicle.[1] At approximately 11:00 a.m., they were traveling south on a road known as Walker Creek Road at a speed of over eighty miles per hour when the vehicle failed to negotiate a winding s-curve, struck two delineator posts, and left the roadway. The vehicle rolled a minimum of one and three-quarter times down an embankment and came to rest on its side, driver's side down. The front windshield was shattered, with blood and hair embedded in it on the driver's side.

[¶5]   Mr. Voytoski was in the front passenger seat when the accident occurred. He lost consciousness and woke up face down on the driver's side window. He suffered a glass shard injury to his left eye, bleeding from the top of his head, a fat lip, and a bloody nose. Mr. Whitmore was outside the vehicle when Mr. Voytoski regained consciousness, yelling at him to wake up and asking if he was alright. Mr. Whitmore suffered multiple abrasions to his head, including bleeding and missing hair on the crown of his head where the scalp was torn. He also had a long scratch and abrasion on his left arm, and it was later found that he had a compression fracture of his T12 vertebrae. Mr. Jurado was ejected from the vehicle and suffered crushing injuries to his head and neck consistent with the vehicle rolling over him prior to his full ejection. His death was immediate.

---

[1] Mr. Whitmore had borrowed his wife's vehicle to get to work.

1

[¶6]    After Mr. Voytoski regained consciousness, he climbed out through the vehicle's sunroof, and he and Mr. Whitmore tried to push the vehicle upright. While they were doing that, a passing motorist stopped and offered assistance, but they declined. A second motorist stopped and asked if they were okay, and Mr. Whitmore responded that they were. The second passerby then pointed to Mr. Jurado, who was lying on the ground further from the vehicle and asked if he was okay. That was the first Mr. Voytoski and Mr. Whitmore knew of Mr. Jurado's location. Mr. Whitmore walked over to him, nudged him with his foot, and told the passerby that Mr. Jurado had responded.

[¶7]    Both passing motorists reported the accident, and Mr. Voytoski used his cell phone to call 911. When law enforcement arrived, both Mr. Voytoski and Mr. Whitmore reported that Mr. Jurado was driving the vehicle at the time of the accident. In a subsequent interview later that day at the oil rig, Mr. Voytoski told Keri McNare, then an investigator with the Converse County Sheriff's Department, that he had lied earlier, and that Mr. Whitmore was driving the vehicle at the time of the accident.

[¶8]    During the accident's investigation, Investigator McNare interviewed Mr. Whitmore and smelled the odor of alcohol and observed signs of alcohol impairment. Subsequent testing of blood drawn from him after the accident showed a blood alcohol concentration of 0.151.

[¶9]    The State charged Mr. Whitmore with felony vehicular homicide, and with five misdemeanors: driving while under the influence; driving without an interlock device; interference with a peace officer; consumption, transportation, or possession of an alcoholic beverage in a motor vehicle; and failing to provide insurance. At Mr. Whitmore's three-day jury trial, the central issue was whether the State could establish that Mr. Whitmore was driving when the vehicle crashed.

[¶10]   Mr. Voytoski testified that Mr. Whitmore was driving at the time of the accident, but after they learned Mr. Jurado had died, Mr. Whitmore asked him to lie and report that Mr. Jurado was driving because "he couldn't go down for this." Mr. Voytoski further testified that when he returned to the rig camp and saw where Mr. Jurado used to sleep, he had a guilty conscience and decided to tell the truth. The State also presented evidence of Mr. Whitmore's scalp injuries and the presence of hair-like fibers in the cracked windshield in front of the driver's seat, and forensic evidence of Mr. Whitmore's blood in that portion of the windshield.

[¶11]   After the State rested, Mr. Whitmore moved for a directed verdict on the failure to provide insurance charge, and the district court granted that motion. Mr. Whitmore then put on a defense case, but he did not testify. The jury returned a verdict of guilty on the vehicular homicide count and the remaining misdemeanor counts. The court sentenced Mr. Whitmore to a prison term of twelve to sixteen years for vehicular homicide, and lesser concurrent sentences for the misdemeanor counts. Mr. Whitmore timely appealed.

## *DISCUSSION*

[¶12]  During the State's closing, the prosecutor argued:

> So I would suggest you start by considering who would know beyond all doubt what happened that day and consider their accounts. There were three people in the car that day. One of those was Antonio Jurado, III. As I stated earlier, you didn't get to hear from him at this trial because he died in that crash. His skull and neck were broken and crushed, dying nearly instantaneously from the injuries that he sustained in that crash.

[¶13]  Mr. Whitmore claims this statement, along with the prosecutor's statement that the jury "also heard from Mr. Josh Voytoski," constituted prosecutorial misconduct. He contends the statements commented on Mr. Whitmore's decision not to testify, improperly shifted the burden of proof to Mr. Whitmore, and improperly vouched for Mr. Voytoski's credibility. He further contends the prosecutor's statements constituted cumulative error.

## I.    *Standard of Review*

[¶14]  Because Mr. Whitmore did not object to the prosecutor's closing argument below, we review for plain error. *Soares v. State*, 2024 WY 39, ¶ 29, 545 P.3d 871, 879 (Wyo. 2024); *see also Ridinger v. State*, 2021 WY 4, ¶ 32, 478 P.3d 1160, 1168 (Wyo. 2021) (reviewing for plain error appellant's claim that prosecutor's closing argument improperly commented on his constitutional right to remain silent). To establish plain error, Mr. Whitmore must show: "1) the record clearly reflects the incident urged as error; 2) a violation of a clear and unequivocal rule of law; and 3) that he was materially prejudiced by the alleged error." *Soares*, 2024 WY 39*,* ¶ 18, 545 P.3d at 877 (quoting *Gutierrez v. State*, 2020 WY 150, ¶ 5, 477 P.3d 528, 530-31 (Wyo. 2020)).

[¶15]  "We have long said that a prosecutor is afforded '[g]reat latitude' when arguing a case to the jury." *Hembree v. State*, 2023 WY 57, ¶ 12, 530 P.3d 314, 318 (Wyo. 2023) (quoting *Watkins v. State*, 2016 WY 108, ¶ 14, 383 P.3d 1080, 1083 (Wyo. 2016)). "We are reluctant to find plain error in closing arguments 'lest the trial court becomes required to control argument because opposing counsel does not object.'" *Hembree*, 2023 WY 57, ¶ 14, 530 P.3d at 318 (quoting *Dixon v. State*, 2019 WY 37, ¶ 39, 438 P.3d 216, 231 (Wyo. 2019)).

***II.     Mr. Whitmore has not shown plain error in the prosecutor's closing argument.***

[¶16]  The record clearly reflects the challenged statement of the prosecutor, so the first element of the plain error test is satisfied. However, Mr. Whitmore has failed to establish that the prosecutor's statements violated a clear and unequivocal rule of law or that he was materially prejudiced by them.

**A.     The prosecutor's argument was not a comment on Mr. Whitmore's decision not to testify.**

[¶17]  "It is a clear and unequivocal rule of law, under both the Fifth Amendment of the United States Constitution and art. 1, § 11 of the Wyoming Constitution, that a prosecutor may not directly or indirectly comment upon a defendant's failure to testify." *Ridinger*, 2021 WY 4, ¶ 35, 478 P.3d at 1160. However, to prove plain error, Mr. Whitmore "must establish a violation of a clear and unequivocal rule of law in a clear and obvious, not merely arguable, way." *Berry v. State*, 2023 WY 75, ¶ 41, 533 P.3d 474, 486 (Wyo. 2023) (quoting *Bogard v. State*, 2019 WY 96, ¶ 21, 449 P.3d 315, 321 (Wyo. 2019)). Additionally, "[w]hen determining whether a prosecutor committed misconduct during closing arguments, 'we review the entire argument, and do not isolate discrete parts of the argument that may be taken out of context.'" *King v. State*, 2023 WY 36, ¶ 44, 527 P.3d 1229, 1245 (Wyo. 2023) (quoting *Fairbourn v. State*, 2020 WY 73, ¶ 89, 465 P.3d 413, 433 (Wyo. 2020)).

[¶18]  In determining whether a prosecutor has commented on a defendant's right to remain silent, we consider the following:

> Whether a prosecutor has improperly commented on a defendant's refusal to testify turns on "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Oldham v. State*, 534 P.2d 107, 112 (Wyo. 1975) (quoting *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir. 1955)). . . . Importantly, "[i]t is not improper for the [prosecutor] to draw attention to the failure or lack of evidence on a point if it is not intended to call attention to the failure of the defendant to testify." *Oldham*, 534 P.2d at 112 (*quoting Knowles*, 224 F.2d at 170).

*Hembree*, 2023 WY 57, ¶ 16, 530 P.3d at 319 (quoting *Ridinger*, 2021 WY 4, ¶ 36, 478 P.3d at 1168-69).

[¶19]  Before asking the jury to consider the statements of the three witnesses who knew beyond a doubt who was driving the vehicle at the time of the accident, the prosecutor asked the jury a rhetorical question of whether it could determine what happened in the accident without a live video of it. After arguing it could start by considering the accounts of the vehicle's three occupants, the prosecutor recounted Mr. Voytoski's testimony, and he discussed the testimony of the passersby, the forensic and other evidence placing Mr. Whitmore in the driver's seat, the evidence of Mr. Whitmore's alcohol consumption, and Mr. Whitmore's own statements to law enforcement, including the inconsistencies in those statements.

[¶20]  When considered in the context of the prosecutor's entire closing argument, we cannot find that the challenged statements were "manifestly intended or [were] of such character that the jury would naturally and necessarily take [them] to be a comment on the failure of the accused to testify." *See Hembree*, 2023 WY 57, ¶ 16, 530 P.3d at 319. They were no more than a segue into the prosecutor's arguments concerning the evidence the jury heard and why Mr. Voytoski's version of events made more sense than Mr. Whitmore's. *See Dixon*, 2019 WY 37, ¶ 44, 438 P.3d at 232 ("[A] prosecutor may comment on the lack of evidence to support the defense's theory and the contents of a defendant's statements if they are introduced.") (citing *Proffit v. State*, 2008 WY 114, ¶ 31, 193 P.3d 228, 241 (Wyo. 2008); *Carothers v. State*, 2008 WY 58, ¶¶ 17-18, 185 P.3d 1, 12-13 (Wyo. 2008)).

**B.      The prosecutor did not shift the burden to Mr. Whitmore to prove he was not driving the vehicle at the time of the accident.**

[¶21]  "In a criminal case, the State bears the burden to prove the defendant is guilty; a defendant has no burden to prove his innocence." *Berry*, 2023 WY 75, ¶ 59, 533 P.3d at 490 (quoting *Black v. State*, 2020 WY 34, ¶ 22, 458 P.3d 1245, 1250 (Wyo. 2020)). "A prosecutor may not argue that the defendant should have put on evidence to explain a missing fact or theory because such an argument improperly shifts the burden of proof to the defendant." *Id*. (quoting *Hamilton v. State*, 2017 WY 72, ¶ 17, 396 P.3d 1009, 1015 (Wyo. 2017)).

[¶22]  Mr. Whitmore contends that the prosecutor's reference to him as one of the two survivors of the accident was an attempt to shift the burden to him to prove he was not driving the vehicle at the time of the accident. First, we note that the prosecutor said nothing about Mr. Whitmore in the challenged statement. He commented only that the jury could not hear from Mr. Jurado, but it did hear from Mr. Voytoski. Additionally, as discussed above, the prosecutor then recited to the jury all the evidence it presented including Mr. Voytoski's testimony, the physical evidence showing that Mr. Whitmore was driving the vehicle at the time of the accident, and Mr. Whitmore's own statements to law enforcement. Mr. Whitmore offers no analysis of how the prosecutor's statements shifted the burden of proof, and taking the statements in the context of the prosecutor's

5

entire closing argument, we are at a loss to find such a shifting. *MSC v. MCG*, 2019 WY 59, ¶ 8, 442 P.3d 662, 665 (Wyo. 2019) ("Essential to appellate review, under any applicable standard of review, is the requirement that an appellant must present cogent argument and authority to support his claim.").

## C.     The prosecutor did not vouch for the credibility of Mr. Voytoski's testimony.

[¶23]  Mr. Whitmore last contends that when the prosecutor referred to Mr. Voytoski as one of three individuals "who would know beyond all doubt what happened that day," he vouched for the credibility of Mr. Voytoski's testimony and intruded on the jury's responsibility to determine the weight and credibility to be afforded his testimony. We disagree.

[¶24]  We have held:

> "Wyoming law is clear that a prosecutor may not elicit opinions concerning witness credibility or personally vouch for the credibility of a witness." *Collins v. State*, 2015 WY 92, ¶ 34, 354 P.3d 55, 64 (Wyo. 2015) (quoting *Fennell v. State*, 2015 WY 67, ¶ 31, 350 P.3d 710, 722 (Wyo. 2015)). Vouching occurs when a prosecutor offers his opinion of a witness's credibility, as distinguished from when he infers credibility from the same evidence the jury has before it. *Collins*, ¶ 36, 354 P.3d at 64-65 (quoting *Fennell*, ¶ 43, 350 P.3d at 725).

*Berry*, 2023 WY 75, ¶ 41, 533 P.3d at 486 (quoting *Byerly v. State*, 2019 WY 130, ¶ 21, 455 P.3d 232, 242 (Wyo. 2019)).

[¶25]  We recognize this rule because "it is the jury's role to determine the credibility of witnesses." *King*, 2023 WY 36, ¶ 44, 527 P.3d at 1245 (quoting *Fennell*, 2015 WY 67, ¶ 31, 350 P.3d at 722). "'It is improper for a prosecuting attorney to inject his opinion as to the weight of the evidence in arguing to the jury' because 'a prosecutor may be seen as an authority whose opinion carries greater weight than the jury's opinion.'" *Id*. (quoting *Harper v. State*, 970 P.2d 400, 405 (Wyo. 1998)).

[¶26] The prosecutor's argument did not inject his opinion as to the credibility of Mr. Voytoski's testimony, or suggest he had an insight separate from that of the jury. He did no more than cite the fact, equally obvious to the jury, that because Mr. Voytoski was in the vehicle at the time of the accident, he was an eyewitness and knew who was driving the vehicle. Beyond that the prosecutor argued only that the evidence fit Mr. Voytoski's version of events and not Mr. Whitmore's. It remained up to the jury to determine whether Mr. Voytoski's eyewitness testimony was credible. The prosecutor's

argument was thus a permissible inference of credibility from the evidence the jury had before it. *Berry*, 2023 WY 75, ¶ 41, 533 P.3d at 486.

[¶27] Given the above, Mr. Whitmore has failed to establish the second prong of the plain error analysis. He has not shown the violation of a clear and unequivocal rule of law in a clear and obvious way.

### D. Mr. Whitmore has not shown he was materially prejudiced by the prosecutor's closing argument.

[¶28] Even if Mr. Whitmore had established a violation of a clear and unequivocal rule of law, he has not shown that he was materially prejudiced by the prosecutor's closing argument. "Material prejudice exists when the appellant demonstrates a reasonable probability that the jury verdict would have been more favorable in the absence of the error." *Soares*, 2024 WY 39, ¶ 37, 545 P.3d at 880 (quoting *Gutierrez*, 2020 WY 150, ¶ 5, 477 P.3d at 531). "The most important factor in our prejudice analysis is the strength of the State's case." *Lott v. State*, 2022 WY 143, ¶ 12, 519 P.3d 646, 649 (Wyo. 2022) (quoting *Shields v. State*, 2020 WY 101, ¶ 40, 468 P.3d 1097, 1108 (Wyo. 2020)).

[¶29] Mr. Whitmore contends he was materially prejudiced by the prosecutor's statements because Mr. Voytoski's testimony was the only direct evidence he was driving the vehicle at the time of the accident, and the State otherwise had only circumstantial evidence of that fact. Whether the State's evidence was direct or circumstantial is of no moment, however, because a conviction may be based on either type of evidence, and the jury was so instructed. *See Berry*, 2023 WY 75, ¶ 33, 533 P.3d at 484 ("Proof of each element of a crime can be established by either direct or circumstantial evidence, and circumstantial evidence includes inferences reasonably drawn from the evidence.") (quoting *Beane v State*, 596 P.2d 325, 327 (Wyo. 1979)).

[¶30] The circumstantial evidence against Mr. Whitmore was compelling. Setting aside Mr. Voytoski's eyewitness testimony, the jury heard evidence that: the vehicle belonged to Mr. Whitmore's wife; Mr. Whitmore had a bleeding injury to the crown of his head with missing hair and an exposed scalp; blood and hairlike fibers were embedded in the shattered windshield in front of the vehicle's steering wheel; DNA testing showed that the blood on that part of the windshield belonged to Mr. Whitmore; testing excluded Mr. Jurado's DNA from the steering wheel, dome light, and visor on the driver's side of the vehicle; and, in describing the accident to Investigator McNare, Mr. Whitmore stated, "I remember I was trying to overcorrect."

[¶31] Given the overwhelming evidence that Mr. Whitmore was driving the vehicle at the time of the accident, Mr. Whitmore has failed to show a reasonable probability that the jury verdict would have been more favorable without the challenged statements by the prosecutor. Because Mr. Whitmore has failed to establish any error, we do not

consider his cumulative error argument. *See Hicks v. State*, 2021 WY 2, ¶ 40, 478 P.3d 652, 663 (Wyo. 2021) (cumulative error analysis performed only if multiple errors found).

[¶32]   Affirmed.